HALL, Judge.
Writs were granted on the applications of the defendant Levee Board, primarily to *1174 review the correctness of an order of the district court certifying this action as a class action. After review, we conclude this is not an appropriate case for a class action and we reverse and set aside the order of the district court.
I.
Thirty-five plaintiffs, owners of land and other real rights in the Fifth Louisiana Levee District which embraces the parishes of East Carroll, Madison, Tensas and Con-cordia, filed .this suit against the Board of Commissioners of the levee district in the district court for Madison Parish on July 7, 1978. The petition alleges that: (1) petitioners are the owners of lands, real rights and other rights in the Fifth Louisiana Levee District adjacent to or abutting or adjoining, or lying under or alongside, or in the vicinity of the Mississippi River or the levee alongside the Mississippi River, and/or the drains, drainage ditches or other drainage facilities related thereto; (2) the proceeding is brought by petitioners as a class action in their own behalf and on behalf of all other parties similarly situated, for injunctive relief and for declaratory judgment, in accordance with LSA-C.C.P. Arts. 591 through 597; (3) the members of the class are so numerous as to make it impractical for all of them to join or to be joined as parties; (4) the interests and rights asserted in the proceeding are common to all members of the class in that all or a portion of the properties and interests and rights therein of each member are currently or prospectively objects of appropriation by the levee district contrary to the provisions of the Constitution and laws of the United States of America and of the State of Louisiana; (5) existence of the criteria for a class action; (6) the defendant Levee Board, acting in concert with the United States Corps of Engineers and the Louisiana State Department of Public Works, beginning in 1973 and continuing for the -next ten to fifteen years, has appropriated or has plans for appropriating lands for the construction, reconstruction, raising, enlargement, repair, relocation, realignment, widening and improvement along the levee along the right descending bank of the Mississippi River from the Arkansas state line on the north to the southernmost, limits of the Board’s jurisdiction on the south; (7) certain contracts have been completed covering certain areas, other contracts are under way, and other contracts are being advertised for bids; (8) plaintiffs are informed they will receive no more than assessed value for those portions of their lands appropriated which lie landward from the levee, will receive no compensation for lands which lie riverward of the levee, and will receive no severance damages; (9) the resolutions of appropriation are null, void and of no legal effect and violative of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, § 2 of the Louisiana Constitution, and lands can only be taken by expropriation as pro-' vided by the law of Louisiana'; (10) irreparable injury will result to petitioners if defendant is not preliminarily and in due course permanently enjoined from entering or disturbing the land and rights of petitioners and from taking any action pursuant to resolutions of appropriation; (11) that no part of the lands appropriated or to be appropriated are batture and that the right of a levee district to appropriate property is limited to batture; (12) $200,000 is estimated to be the cost of asserting this class action and petitioners are entitled to all costs including attorney’s fees; (13) alternatively, that a fund should be established for the payment of all costs consisting of amounts withheld by defendant under court direction from compensation paid or deposited at any time by defendant to or for the account of a petitioner or member of the class; and (14) petitioners specifically assert an action of “inverse expropriation” and actively seek and sue for redress as to all property taken or damaged by defendant without such proper exercise of expropriation.
Plaintiffs prayed for: (1) a preliminary injunction enjoining defendant from entering or disturbing the land, real rights or other rights of plaintiffs and the class; (2) perpetuation of the preliminary injunction, *1175 mandating that all land and rights previously or subsequently taken or damaged be compensated for at actual value with interest and attorney’s fees; (3) the action to be litigated as a class action or, alternatively, be maintained as an ordinary proceeding in inverse expropriation on behalf of the named plaintiffs; (4) declaratory judgment recognizing this inverse expropriation action and the rights of plaintiffs and each member of the class to full and just compensation as in expropriation and decreeing that appropriation of lands is illegal and unconstitutional; (5) judgment declaring the rights of plaintiffs and each member of the class to full, just and adequate compensation in damages and to recovery of all expenses and costs of this action; (6) a fund to be established for the payment of all costs, the fund to consist of amounts withheld by defendant under court direction from compensation paid or deposited at any time by defendant to or for the account of a plaintiff or member of the class and to continue in existence until terminated by court order; (7) defendant be ordered to withhold from each payment or deposit of compensation to a plaintiff or member of the class a proportionate share of the cost; (8) other alternative relief relating to the fund to be established; and (9) general and equitable relief.
Several exceptions were filed by the defendant. On October 4, 1978, pursuant to plaintiffs’ motion, the district court rendered an ex parte order certifying the suit as a class action and ordering that notice of the class action be given to all class members by mail and by publication, requiring class members to file an election to be excluded on or before October 30. By separate order dated October 4, 1978 the defendant was ordered to show cause why the ex parte order should not be affirmed and confirmed. Defendant filed additional exceptions. On October 17, the hearing was held on all pending motions and exceptions. Judgment was rendered overruling most of defendant’s exceptions and ordering that the certification of the action as a class action be maintained. From this order defendant filed two applications for writs, one directed primarily toward the propriety of this suit as a class action and the other directed primarily toward the propriety of this suit as an action for declaratory judgment. Writs were granted by this court, mainly to review the class action issue.
II.
LSA-C.C.P. Arts. 591 and 592 establish three requirements for a class action; (1) a class so numerous as to make it impractical for all of the class members to join or be joined as parties; (2) the character of the rights sought to be enforced for or against the members of the class is common to all members of the class; and (3) the joinder as parties to the suit of one or more members of the class who will fairly insure the adequate representation of all members.
The Louisiana class action is adapted from Federal Rule of Civil Procedure 23 as originally promulgated in 1937. The hybrid and spurious class actions of the federal rule were deliberately rejected by the Louisiana Legislature. Article 591 authorizes only the true class action. Williams v. State, 350 So.2d 131 (La.1977); Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144 (La.1975).
In the Louisiana true class action the existence of a common question of law or fact does not by itself justify a class action as involving a common character of the right to be enforced. There must exist a relationship between the claims greater than simply that of sharing a common question of law or fact.
Whether the class action remedy sought should be allowed or disallowed depends upon the ultimate determination of whether “the class action will be clearly more useful than other available procedures for definitive determination of a common-based right, , in the interests of the parties (including both the class and the opponents) to it) and of the efficient operation of the judicial system.” The values of effectuating substantive law, judicial efficiency, and individual fairness involved in allowing or disallowing a class action are *1176 intertwined. These values were discussed in Stevens as follows:
“In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decision that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
“But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to the members of the class, or to the party opposing the class, to permit separate adjudication of the claims. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action.”
In Stevens and Williams the court noted certain functional and pragmatic factors or criteria, drawn from Federal Rule 23(b), which should be taken into consideration by the court in making its determination of whether to allow a class action. The guidelines established by Rule 23(b) are:
“ * * * An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1)the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.”
In Williams the court also referred to similar but more detailed criteria set forth by the Uniform Class Actions Act. Williams, 350 So.2d p. 134, footnote 3.
III.
In making the determination of whether the class action should be allowed in this case it is necessary to analyze plaintiffs’ cause of action and the nature of the relief sought.
The'class is defined as “the owners of lands, real rights and other rights in the *1177 Fifth Louisiana Levee District in the State of Louisiana adjacent to or abutting or adjoining, or lying under or alongside, or in the vicinity of the Mississippi River or the levee alongside the Mississippi River, and/or drains, drainage ditches or other drainage facilities related thereto.” Plaintiffs allege that the Levee Board has appropriated and will in the future appropriate lands along the right descending bank of the Mississippi River for levee construction and reconstruction purposes with payment of only the assessed value as compensation or with no compensation at all. Plaintiffs pray for permanent injunctive relief (plaintiffs originally prayed for a preliminary injunction but have abandoned this claim for relief), enjoining defendant from taking and damaging any land without prior payment of just and full compensation; judgment recognizing this action as one in “inverse expropriation” and the right of each member of the class to full compensation as in expropriation; judgment decreeing that appropriation of land is illegal and unconstitutional; judgment declaring the rights of each member of the class to full, just and adequate compensation for all property and rights of which they may be divested by defendant; and the establishment of a fund to cover attorney’s fees and other costs out of payments of compensation hereafter made by the Levee Board to any member of the class. Although the prayer of plaintiffs’ petition is not entirely clear in this respect, plaintiffs disclaim in brief and oral argument before this court any prayer for a money judgment in favor of any member of the class in this proceeding.
In order to analyze plaintiffs’ cause of action it is necessary to consider the law relating to appropriation for levee purposes as it exists and has existed during the period involved in this suit.
Riparian property (property adjacent to a navigable stream) is subject to the levee servitude (an ancient-servitude codified in Civil Code Article 665) and may be appropriated (as distinguished from expropriated) for levee purposes, if the property was riparian when severed from the public domain and if the property is within the range of the reasonable necessities of the situation as produced by the forces of nature unaided by artificial causes. Use of property subject to the levee servitude for levee purposes is not a taking of private property for which compensation is due under either the Louisiana or Federal Constitutions, any compensation provided for by Louisiana constitutional or statutory law being a mere gratuity. The rationale of decisions upholding the constitutionality of appropriation for levee purposes is that the levee servitude was reserved to the public at the time riparian property was severed from the public domain and that title to such riparian property is held subject to the servitude. Eldridge v. Trezevant, 160 U.S. 452, 16 S.Ct. 345, 40 L.Ed. 490 (1896); Delaune v. Board of Commissioners, 230 La. 117, 87 So.2d 749 (1956); Dickson v. Board of Com’rs of Caddo Levee Dist., 210 La. 121, 26 So.2d 474 (1946); Deitic Farm and Timber Co., Inc. v. Board of Commissioners for the Fifth Louisiana Levee District, 368 So.2d 1109 (La. App. 2d Cir. 1979); and numerous other eases cited in the foregoing decisions.
Article 16, § 6 of the Louisiana Constitution of 1921 provided for payment for lands used or destroyed for levee purposes at a price not to exceed the assessed value. Article 6, § 42 of the Louisiana Constitution of 1974, which went into effect at midnight on December 31, 1974, provides that lands and improvements actually used or destroyed for levee or levee drainage purposes shall be paid for as provided by law. Article 14, § 32 of the 1974 Constitution provides that the provisions of Article 16, § 6 of the 1921 Constitution shall be continued as a statute, subject to change by the Legislature, and the amount of compensation therein required to be paid for property used or destroyed for levee or levee drainage purposes shall be paid as provided in that Section until the Legislature enacts a law to effectuate Article 6, § 42 of the 1974 Constitution.
Act 314 of 1978, effective July 10, 1978, provides that all lands and improvements *1178 hereafter actually used, damaged or destroyed for levees or levee drainage purposes shall be paid for at fair market value to the full extent of the loss and just compensation for both the land and improvements taken or destroyed and for damages suffered by reason thereof shall be paid to the owner. The Act further provides that the owner shall be compensated as provided in the Act only when and to the extent that the Legislature, the Levee Board or the federal government appropriates the funds therefor. The Act provides that the compensation defined therein shall apply to all lands and improvements taken, damaged or destroyed after the effective date of the Act and to the determination of just compensation in any expropriation or appropriation suit pending on July 10, 1978, involving lands and improvements taken, damaged or destroyed for levee and levee drainage purposes.
Act 113 of 1975, enacting Louisiana R.S. 38:301 through 301.45, effective September 12, 1975, provides a procedure for expropriating property needed for levee purposes whenever any levee district cannot appropriate or amicably acquire such property. The statute requires the filing of a suit and the deposit into court of the estimated full extent of the owner’s loss for the expropriation or the damage caused by the taking.
The principal thrust of plaintiffs’ case is that Eldridge v. Trezevant, supra, was incorrectly decided and that the Fifth Amendment to the United States Constitution prohibits use of any property for levee purposes without payment of just compensation. Plaintiffs are also urging that there is no levee servitude as defined in the well-established Louisiana jurisprudence and that there is no right of appropriation for levee purposes. Alternatively, plaintiffs are urging that the levee servitude and right of appropriation is limited to certain lands, under various and multiple theories, depending on varying origins of title, and other varying factors. Plaintiffs are urging, in the further alternative, rights to full compensation based on provisions of the 1921 Constitution, 1974 Constitution, and statutes enacted in 1975 and 1978.
A principal object of plaintiffs’ suit, which was filed on July 7, 1978, a few days prior to the effective date of Act 314 of 1978, is to bring plaintiffs and members of the class within the provisions of the Act relating to the determination of just compensation “in any expropriation or appropriation suit pending on July 10, 1978.”
Although the full extent of the multiple theories advanced by plaintiffs is not disclosed by the pleadings, briefs and arguments at this point in the litigation, it is perfectly clear that plaintiffs seek a judgment determining whether each plaintiff and each member of the class is or is not entitled to full compensation for property previously used or which may in the future be used for levee purposes. Plaintiffs’ brief, argument and testimony at the hearing reveal that if they are unsuccessful in their principal objective, the overturning of well-established jurisprudence and a resulting declaration that no property can be used for levee purposes without payment of full compensation, then numerous divergent questions of law and fact must be determined as to different plaintiffs and members of the class in deciding whether each is or is not entitled to full compensation. For example, in testimony at the hearing counsel for plaintiffs stated that guidelines could be established for the court in regard to high water, low water, riparian, nonripa-rian, and other factors, so that the court could determine which, if not all, members of the class are entitled to full compensation. In a supplemental brief, counsel states that different results as to different members of the class can result if interpretation and application of Act 314 of 1978 is required. Different results might ensue as to different plaintiffs based on when the property was or will be used, the nature of the use, the location and nature of the property used, origin of title, and other varying factors.
Thus, plaintiffs’ action presents many questions of law or fact that are not common to all members of the proposed class. Plaintiffs’ contention that the one common *1179 overriding issue is whether all members of the class are entitled to full compensation under the Fifth Amendment is an over-simplification of the case, as postured by plaintiffs themselves. Multiple sub-issues are presented, dividing the proposed class into numerous sub-classes, and possibly requiring a separate determination of the respective rights of the Levee Board and each individual owner in relation to each individual tract of land.
IV.
We find the class action is not allowable. The criteria we deem decisive include:
(1) The persons constituting the class as defined by plaintiffs are so numerous as to make it impractical for all of them to join or be joined as parties. However, the class as defined is too vague and indefinite, at least geographically. The class members should be easily identifiable. It might be difficult to determine whether a particular person was the owner of land, real rights or other rights “in the vicinity of the Mississippi River or the levee alongside the Mississippi River, and/or the drains, drainage ditches or other drainage facilities related thereto.” The possibility of subsequent litigation to define the class or to identify a member of the class defeats the purpose of a class action. Since the judgment in a class action would be res judicata as to all members of the class it is necessary that the members of the class be identified with particularity. Further, the vagueness of the class makes it difficult to evaluate the requirement of a common character of right among the members of the class and the requirement of adequate representation.
(2) The prosecution of separate actions by individual members of the class would not create an undue risk of inconsistent or varying adjudications nor as a practical matter be dispositive of the interests of other members or substantially impair their ability to protect their interests.
The number of forums available to members of the proposed class is not great and there is little reason to anticipate varying results. The appellate process is available to reconcile varying results in trial courts. Although plaintiffs argue that over 1,000 suits may be filed, the fact is that the project has been going on since 1973 and only a few cases have been filed. Under Louisiana’s restrictive application of res ju-dicata and nonapplication of collateral es-toppel, plaintiffs’ suit would not be disposi-tive of the interests of other members of the class who could protect their interests by litigating their rights to just compensation, regardless of the outcome of this suit.
(3) Although the Levee Board has refused full compensation to landowners whose property is subject to the levee servitude and to this extent has acted on grounds generally applicable to most riparian owners, the class as broadly defined includes others who do not fall in that category. Further, it is not demonstrated that the Levee Board will act in the same manner as to property used after the effective date of Act 314 of 1978. Final injunctive or declaratory relief with respect to the class as a whole is not appropriate.
(4) The questions of law or fact common to the members of the class do not predominate over questions affecting individual members. This factor is discussed more fully in section III above.
(5) The class action is not superior to other available methods for the fair and efficient adjudication of the controversy. As landowners whose properties are differently situated and differently affected by the Levee Board’s actions, the interests of individual members of the class in individually controlling the prosecution of separate actions is substantial. We perceive no particular desirability, from a judicial efficiency standpoint of concentrating the litigation of the claims of the members of the class in the district court for Madison Parish. Considering the divergence of the claims under plaintiffs’ alternative theories and demands, the management of the class action could become not only difficult, but virtually impossible.
*1180 It is not demonstrated that the cost of litigating claims to full compensation by landowners who desire to do so is so great as to deter or impede the prosecution of such claims. Obviously plaintiffs, who allege ownership of lands valued in excess of $5,000,000, are in a position to prosecute their action without the necessity of calling on other members of the class to share in the cost. Most landowners who wish to assert similar claims to full compensation should be in a position to do so. It should be noted also that at the conclusion of this declaratory judgment action it will still be necessary where disputes exist for the compensation demands of each individual member of the class to be adjudicated in separate actions.
(6) The action does not seek to enforce or implement a clear legislative policy. To the contrary, it seeks primarily to overturn well-established jurisprudence and seeks to have declared unconstitutional Louisiana constitutional and statutory provisions.
As stated in Stevens, the ultimate determination is whether the class action will clearly be more useful than other available procedures for definitive determination of a common-based right, in the interest of fairness to the parties and of judicial efficiency. Our conclusion is that the values of effectuating substantive law, judicial efficiency and individual fairness will not be served by allowing this action to proceed as a class action. The class action would impair, not serve, these values. It should not be allowed in this case.
V.
Numerous other issues are presented by the exceptions filed by the defendant in the trial court and by the applications for writs filed in this court. It is specifically noted that no ruling of the district court and no issue other than the allowance of the class action has been considered or ruled upon by this court at this interlocutory stage of the proceeding.
For the reasons assigned, the orders of the district court certifying and confirming this action as a class action are reversed and set aside. Defendant’s exceptions are sustained insofar and only insofar as they oppose certification of this action as a class action. The case is remanded to the district court for further proceedings in accordance with the views expressed in this opinion and in accordance with law. Assessment of costs shall await final determination of the action.