658 So.2d 46 (1995)
May Crutchfield, Wife of/and Peter VELA
v.
PLAQUEMINES PARISH GOVERNMENT.
Andrea Maxwell, Wife of/and James R. DAIGLE
v.
PLAQUEMINES PARISH GOVERNMENT.
Evelyn Antoine ROSE
v.
PLAQUEMINES PARISH GOVERNMENT.
John J. VOGT, III, et al.
v.
PLAQUEMINES PARISH GOVERNMENT.
Nos. 94-CA-1161, 94-CA-1162, 94-CA-1163 and 94-CA-1164.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 1995.
*47 Brook, Morial, Cassibry, Pizza & Van Loon Jack Pierce Brook, Jan T. Val Loon, M. Allyn Stroud, David Shaw, New Orleans, for appellant.
Bubrig and Waid, Brian J. Waid, Buras, for appellees.
Before BARRY, BYRNES and WALTZER, JJ.
BYRNES, Judge.
The defendant, Plaquemines Parish Government, appeals a judgment in favor of the plaintiffs in these consolidated actions certifying the existence of a class pursuant to LSA-C.C.P. art. 591 and 592. We affirm.
Plaintiffs are eleven riparian landowners who allege that their property was appropriated for levee purposes by the Plaquemines Parish Government (Plaquemines). They seek compensation for the fair market value of their property, severance damages and attorney's fees. Some plaintiffs also seek recovery for damages to structures on their property caused by the levee improvements at issue. This dispute arises out of a project known as the "First Enlargement, New Orleans to Venice, Louisiana, West Bank Mississippi River Levee, Hurricane Protection Project." Plaquemines acknowledges the appropriation. Class action certification will not be overturned on appeal in the absence of manifest error. Spitzfaden v. Dow Corning Corp., 619 So.2d 795 (La. App. 4 Cir.1993), writ den., 624 So.2d 1236 and 1237 (La.1993), and Adams v. CSX Railroads, 615 So.2d 476 (La.App. 4 Cir.1993). Although proof of the basic elements necessary to class certification falls upon plaintiffs, whenever doubt exists on the certification issue, the court should find in favor of certification. *48 McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 620 (La.1984). A class is properly certified if: (a) the class is so numerous that joinder is impracticable; (b) there is joinder as parties of one or more persons who are members of the class and who will adequately represent the absent members of the class; and (c) there exists a "common character" among the rights of the representatives of the class and the absent members of the class. Adams; See LSA-C.C.P. art. 591.
A presumption arises that joinder is impractical if more than 40 class members exist. Adams. Plaintiffs contend that there are approximately 600 landowner groups in the class. Plaquemines in its brief states that: "Plaintiffs have alleged that there are over 150 `groups' of affected landowners." Plaquemines does not deny that allegation. We may safely assume that the class ranges somewhere between 150 and 600 members, if not more. Any number in that range would be sufficient to withstand manifest error review under the Adams standard.
Plaquemines is critical of the trial court's reliance on Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177 (La.App. 1 Cir.1992), writ den., 605 So.2d 1122 (La.1992), a "mass disaster" tort case which Plaquemines argues should have no bearing on this land appropriation case. It is Plaquemines' contention that in "... the tort law context, it is difficult to envision any reason why an injured party would not desire to seek compensation other than for the reason, specifically considered in the Livingston Parish Police Jury case, that his individual claim is too small to attract legal representation or otherwise merit the bringing of a separate lawsuit." Plaquemines asserts that this land appropriation case is different because landowners with small claims may have several reasons for not filing claims:
The landowner might well perceive that any judgment rendered in the landowner's favor could be largely offset or even exceeded over the long term by increased property taxes that are assessed in order to pay for such judgments. Furthermore, the landowner might consider the benefit of increased levee protection as "compensation" enough, and desire to take no action that could conceivably discourage the government from maintaining and improving the levee district.
As it is safe to assume that there are far more property tax payers in the district whence this levee land was appropriated among whom the costs of any judgments may be amortized by future property taxes than those whose lands were appropriated, it is virtually impossible for any individual whose land was appropriated to have to pay more in taxes to pay for the cost of his compensation than he receives as compensation. Any landowner who fails to grasp this concept may protect himself by simply opting out of the class, as may those altruistic members of the class who feel that they have been compensated enough by having improved levee protection.
Our state constitution calls for payment for levee lands. La. Const. of 1974, Art. 6, Sec. 42. LSA-R.S. 13:5111 mandates that the court award reasonable attorney's fees for successful plaintiffs in appropriation litigation and requires that any settlement not reduced to judgment "shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred ..." These constitutional and statutory provisions of substantive law declare a public policy that landowners be compensated for lands appropriated for levee purposes. We cannot say that the trial court was manifestly erroneous in determining that the certification of the class would effectuate this public policy.
Plaquemines does not contest the fact that the right sought to be enforced is common to all members. LSA-C.C.P. art. 591(1). Pillow v. Bd. of Com'rs For Fifth Louisiana Levee Dist., 369 So.2d 1172, 1178 (La.App. 2 Cir.1979), writ den., 373 So.2d 525 (La.1979), appeal after remand, 425 So.2d 1267 (La.App. 2 Cir.1982), writ granted, 427 So.2d 1200 (La.1983), and writ recalled, 445 So.2d 1225 (La.1984), is inapposite:
Different results might ensue as to different plaintiffs based on when the property was or will be used, the nature of the use, the location and nature of the property *49 used, origin of title, and other varying factors.
Thus, plaintiffs' action presents many questions of law and fact not common to all members of the proposed class.
Pillow involved an attempt to certify as a class all owners of lands, real rights and other rights in the Fifth Louisiana Levee District adjacent to or abutting, adjoining, lying under, alongside, or in the vicinity of the Mississippi River or the levee alongside the Mississippi River, and/or the drains, drainage ditches or other drainage facilities related thereto for lands appropriated since 1973 and to be appropriated in the future for all manner of unrelated projects. The court noted that the description of the class was so vague as to invite subsequent litigation, thereby defeating the purpose of a class action. The court also noted a 1978 change in the law which could prompt the Levee Board to treat claims arising after that date differently, thus destroying a common element of the class. Plaquemines does not suggest that any of these Pillow problems exist in the instant case.
Instead Plaquemines argues that "consolidation of those cases for the purpose of discovery, pre-trial motions and trial could easily accomplish the same level of judicial efficiency as a class action." Plaintiffs counter that "such a suggestion ignores the extraordinary costs of filing, copying and serving individual notices, together with the management difficulties inherent in such a scenario." Such a decision is a judgment call to be made by the trial judge to be reversed by this court only upon a finding of manifest error.
Viewing the record as a whole, there is ample support for findings of judicial economy and fairness. Moreover, Plaquemines disputes neither the adequacy of the class representation, nor that the rights sought to be enforced by the class representatives are common to the class as a whole. Therefore, we find no manifest error in the class certification.
For the foregoing reason the judgment of the trial court is affirmed.
AFFIRMED.
BARRY, J., concurs.
BARRY, Judge, concurring.
Based on the record I do not join in the majority's assumption that "it is virtually impossible for any individual whose land was appropriated to have to pay more in taxes... than he receives as compensation." Nonetheless, the existence of several possible reasons not to join the class action does not negate that many claims are so small that they might not otherwise be brought.