Dear Mr. Ramsey:
This responds to your request for a clarification of state, federal, and local law as pertains to a landowner's authority to place gates, fences, or other obstructions on parish-maintained flood control structures, to a landowner's authority to exclude the public from the use of those structures on his property, and also to a landowner's authority to graze livestock on those structures.
Property adjacent to a navigable stream has historically been subject to the levee servitude at Art. 665 of the Civil Code, if the property was riparian when severed from the public domain. Use of this property for levee purposes is not considered a taking of private property under Louisiana law, but rather the property was burdened with the servitude for the benefit of the public at time of severance from the public domain. See, Pillow v. Board of Commissioners for FifthLouisiana Levee District, 369 So.2d 1172 (La.App. 2nd Cir. 1979). This doctrine of appropriation is distinguished from traditional expropriation.
It appears that some of the "levees" in question fall outside the normal conception of what actually constitutes a levee, as many sections of the system do not even border on water. That being the case, a workable definition of a levee should be a starting point for analysis. No Louisiana statute defines exactly what a levee is, but Black's Law Dictionary defines a levee as "an embankment or artificial mound of earth constructed along the margin of a river, to confine the stream to its natural channel or prevent inundation or overflow. Also, a landing place on a river or lake; a place on a river or other navigable water for loading and unloading of goods and for the reception or discharge of passengers to and from vessels lying in the contiguous waters. . . ." It seems that this definition would restrict a "levee" to existing only as a barrier on a navigable waterway.
Should that be the case, only the east side of the levee system, which abuts the Atchafalaya River, qualifies as a true levee. The southern and western boundaries of the system, which abut man-made or non-navigable waterways, are not levees in the sense of the above mentioned definition. On the northern side of the system, the "levees" do not abut a waterway at all, and thus on the northern, western, and southern boundaries of the system, the "levees" are more accurately described as flood control structures. Therefore, the levee servitude established in La.C.C. Art. 665 is not applicable to any of the above-mentioned structures other than the eastern boundary of the system.
Prior to July 10, 1978, the effective date of Act 314 of 1978, the compensation owed to a landowner for land used or destroyed for levee purposes was the assessed value of the property. This was the procedure established in Article 16, § 6 of the 1921 Constitution. After that date the compensation is set at fair market value. Of interest to the instant inquiry are the provisions of La. R.S. 38:301, et seq. These statutes provide a procedure for expropriating
land for levee purposes where the needed property cannot beappropriated (subject to the C.C. Art. 665 servitude) or no amicable arrangement with the landowner can be reached. The conclusion necessarily drawn is that the public agency would be required to expropriate non-riparian property for levee purposes and if expropriated it would be public property and completely subject to public agency control. See Attorney General's Opinion Number 77-906, August 18, 1977.
The broad powers of a levee board in preventing obstructions on levees built on a C.C. Art. 665 servitude are clear.Hathorn v. Board of Commissioners of Red River,Atchafalaya, Bayou Boeuf Levee District, 210 So.2d 335
(La.App. 3rd Cir. 1969). However, we are not of the opinion that such powers extend to servitudes or rights of use of a lesser nature unless the public agency has utilized the legal means available to acquire those rights; i.e., expropriation.
That having been said, the laws on the books both federal and state are inapplicable to the structures along the northern, western, and southern boundaries of the system, and therefore the owners of property along those boundaries are within their rights to both exclude the public and fence off their property, as well as graze livestock along the structures.
As to the question whether the roadway atop the structures is a public road, La. R.S. 48:491(A) defines public roads as "[A]ll roads or streets in this state that are opened, laid out, or appointed by virtue of any act of the legislature, or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any municipality." Section (B) of the statute provides that all roads and streets maintained or worked for three years by a parish governing authority shall be a public road. Our understanding is that the roadway has never served any purpose other than as an access for the levee district in building and maintaining the structures. Therefore, the roadway has never been "opened" as required by Section A of the statute, and it is consequently not a "road or street" within the contemplation of Section B. While the levee district does have the right to use the road for the maintenance of the flood control structures, it does not have the right to force landowners to keep their property open to all comers. This office suggests that the levee district work with the affected property owners to reach an amicable settlement.
The rest of this opinion will deal with the applicable law on the eastern boundary of the system, where the flood control structures actually do qualify as levees. In your letter, you pose four questions, but we will answer the first two questions as one. Private individuals are not authorized to install and maintain fences or gates or other obstructions on levees built by the U.S. Army Corps of Engineers and maintained by parish government. According to 33 U.S.C. § 408, it is illegal to "[B]uild upon . . . or obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any . . . levee . . . or other work built by the United States. . . ." At Louisiana law, it is also illegal to "Place or cause to be placed upon or within six feet of any part of the levees fronting any waterway subject to the control . . . of police juries, levee boards, municipal corporations, or other authorized boards or departments any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair of any levee." La. R.S.38:225. These two statutes indicate that individuals may not place gates, fences, or other obstructions without gaining permits from the governing body maintaining the levees in question. Therefore, in answer to your first two questions, we hereby restate the response given you by Mr. Robert Tisdale of the U.S. Army Corps of Engineers.
You have also asked us whether individuals could exclude the public from the use of levees on their property. The fact that the levees in question contain roads that have been maintained by the parish does not affect the landowner's right to exclude the public from the use of his property, but he must provide access to governmental agencies. See Attorney General's Opinion Number 86-778.
Finally, you pose the question whether a landowner has the right to graze livestock on parish-maintained levees without the permission of the local governmental authority. La. R.S. 3:2571
specifically states that no livestock can be grazed on a levee when there is water on one side, presumably absent permission by the local governing body, but when there is water on both sides of the levee, the landowner can keep his livestock on the levee temporarily. Applying this statute to the facts at hand, it would appear that landowners seeking to graze cattle and other livestock along the levees at the eastern boundary of the system may do so only with a permit from the proper governmental authority.
This opinion assumes that when the flood control structures were built, the affected landowners were not compensated at fair market value for the public use of their land according to La. R.S. 38:301(C), but rather they agreed to the limited use for flood protection. Should this be a wrong assumption, please let us know, as this would significantly affect the rights of the levee district in this regard.
In sum, St. Mary Parish does not have the authority to preempt the rights of landowners along the southern, western, or northern boundaries of the flood control system with respect to placing fences, gates, and other obstructions along the structures, generally excluding the public from their property, or grazing livestock on the structures, although the levee district does have the authority to use the roadway atop the structures to maintain them. On the eastern boundary of the system, the levee district has full rights under the levee servitude, and landowners along the eastern boundary may not place obstructions or graze livestock on the levee, nor may they exclude governmental agencies from that property, though they may exclude the general public.
We trust that this opinion adequately addresses your questions. If we can be of any further assistance on this or any other question, please feel free to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ ROBERT B. BARBOR Assistant Attorney General
RPI/RBB:gbe
Date Released:
Date Received: