690 So.2d 114 (1997)
Jean BOUDREAUX and the Victims of the Flood on April 6, 1983 on the Tangipahoa River
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 96 CA 0137.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*117 Byard Edwards, Jr., Andrew M. Edwards, Ponchatoula, and Jean-Paul Layrisson, New Orleans, for Plaintiffs-Appellees, Jean Boudreaux, et al.
Richard P. Ieyoub, Attorney General, Baton Rouge, and William J. Doran, Special Assistant to General Counsel, DOTD, Baton Rouge, and Julie Mobley Lafargue, Reginald W. Abrams, Abrams & Lafargue, Shreveport, for Defendant-Appellant, State of Louisiana, Department of Transportation and Development.
Before CARTER and PARRO, JJ., and McDONALD,[1] J. Pro Tem.
PARRO, Judge.
In this class action for damages resulting from flooding, the State of Louisiana, through the Department of Transportation and Development ("DOTD") appeals the trial court judgment which denied its exception to plaintiffs' case as a class action and certified the plaintiffs' claims as a class action pursuant to LSA-C.C.P. arts. 591 and 592. For the following reasons, this court affirms.

Facts and Procedural History
On April 6, 1984, Jean Boudreaux ("Boudreaux") filed a petition styled as a class action suit for damages against DOTD, the State of Mississippi ("Mississippi") and the owners of the dams and property in Zemurray Park on Chappepeela Creek. She filed this action in proper person on her own behalf and as representative of the other flood victims.[2] The petition identified plaintiffs as people who suffered damage from the April 6, 1983 flood waters from the Tangipahoa River in Tangipahoa Parish. Plaintiffs alleged, on the basis of negligence and strict liability, that defendants were liable for damages suffered by them, including mental anguish, property damage, and lost income and wages.
DOTD filed an exception to plaintiffs' petition insofar as it asserted a class action, claiming it lacked allegations sufficient to justify using this procedure and that the Louisiana trial court, lacking jurisdiction over Mississippi, could not adjudicate all controversies among the parties. DOTD requested a hearing to determine whether this action could be properly maintained as a class action. Plaintiffs opposed DOTD's exception and requested the trial court to certify the suit as a class action and to adopt a plan for the management of this action pursuant to LSA-C.C.P. art. 593.1(C).
Mississippi excepted to the lack of subject matter and in personam jurisdiction, based on the eleventh amendment to the United States Constitution and Mississippi's sovereign immunity. It later filed an exception of no cause of action based on its sovereign immunity.[3] These exceptions were eventually dismissed by the trial court, but the plaintiffs later moved to sever and stay their *118 claims against Mississippi. Mississippi concurred with this motion; it is still pending.
Some time after filing its exception to the class action procedure, DOTD filed a peremptory exception raising the objection of prescription as to all plaintiffs except Boudreaux. It also filed a third-party demand against Mississippi for indemnity or contribution, to which Mississippi responded by again raising its jurisdictional objections, this time based on the United Stated Constitution, Article III, § 2.
On September 26, 1995, the trial court conducted a class certification hearing in conjunction with a hearing on DOTD's exceptions regarding the use of a class action and prescription. In support of their request for certification, plaintiffs presented the testimony of seven proposed class representatives and two other witnesses who testified as to the facts surrounding the flood and the damages they allegedly suffered as a result of it. These witnesses had personally viewed the flooding in the geographical area within the class boundaries. They described their damages and the extent of the flooding, and some testified about water flowing south across U.S. Interstate Highway I-12 ("I-12"). Plaintiffs introduced maps and graphic overlays showing the location of the property of the individuals who had asserted claims. The maps and graphic overlays were prepared by Paul Vidacovich of Pyburn & Odom, Inc., who testified at the hearing regarding the surveying procedures involved in their preparation. Plaintiffs also called Dr. Alim Hannoura, a professor and director of engineering and applied sciences at the University of New Orleans, who qualified as an expert in the area of hydrology, having special expertise in the analysis of numerical data related to the flow of flood water. DOTD presented no evidence to support its exceptions.
After the hearing, the trial court rendered a judgment in favor of plaintiffs, denying DOTD's exception of prescription and granting plaintiffs' request for class certification. The trial court defined the class as:
all persons residing, owning, and/or possessing movable and immovable property located in the southern part of Tangipahoa Parish which was affected from the waters of the Tangipahoa River in the flood of April, 1983, being more specifically depicted as the area bounded by blue lines and having blue diagonal lines all in accordance with a certain plat prepared for Byard Edwards, Jr. and introduced into these proceedings as "Pyburn & Odom Exhibit 2" on September 26, 1995, who suffered property, business, or personal injuries as a result of the flooding which occurred in April, 1983.
DOTD appeals this judgment and argues the trial court erred in certifying the class because there is no common character of rights asserted by the class members, the evidence does not support certification, and there are unresolved issues of jurisdiction over Mississippi.[4]

Standard of Review
The appellate court's review of factual findings is governed by the manifest error clearly wrong standard. The two-part test for the appellate review of factual findings is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). An appellate court may not set aside a trial court's factual finding unless, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
The law is unclear concerning the appropriate standard of review for the trial court's discretionary decision granting or refusing class certification. The jurisprudence uniformly indicates that the trial court is afforded great discretion in class action certification. Wide latitude must be given the *119 trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. Ellis v. Georgia-Pacific Corp., 550 So.2d 1310, 1313 (La.App. 1st Cir.1989), writ denied, 559 So.2d 121 (La.1990). Given this latitude, some cases state such decisions are reviewed only for an abuse of the court's discretion. See, e.g., Bergeron v. AVCO Fin. Services, 468 So.2d 1250 (La.App. 4th Cir.), writ denied, 474 So.2d 1308 (La.1985); Ducote v. City of Alexandria, 95-1197 (La.App. 3rd Cir. 3/6/96), 670 So.2d 1378. Other cases simply chant the manifest error mantra, which can be traced in many of these cases back to Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), a case which elucidated this standard of review, but had nothing to do with class certification or other discretionary decisions. See, e.g., Ellis v. Georgia-Pacific Corp., 550 So.2d at 1313 ("Unless the trial court has committed manifest error, we must confirm the order. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)."). Still others refer, without much analysis, to both standards. See, e.g., Casse v. Sumrall, 547 So.2d 1381, 1384 (La.App. 1st Cir.), writ denied, 551 So.2d 1322 (La.1989) ("In the instant case, we find no abuse of discretion or manifest error in the trial court's certification of the present suit as a class action.")
However, we feel a more complete and correct analysis of the appropriate standard of review for this discretionary decision was provided by Judge Lanier in a well-reasoned concurrence in the Ellis case. He analogized this decision to other discretionary judgments, such as damage awards, which are reviewed for abuse of discretion, and stated:
[T]he factual findings upon which a class action certification is based should be reviewed on appeal by the manifest error (clearly wrong) standard. After the trial court makes its determinations of fact, it exercises its discretion to certify the class or not. This discretionary judgment must be reviewed on appeal by the abuse of discretion standard.
Ellis v. Georgia-Pacific Corp., 550 So.2d at 1326 (Lanier, J., concurring in part and dissenting in part). See also, Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1184 (La.App. 1st Cir.1992) (Lanier, J., concurring), writ denied, 605 So.2d 1122 (La.1992). This view is supported by the Louisiana Supreme Court's emphasis on the discretionary nature of the class certification decision in Stevens v. Board of Trustees, 309 So.2d 144 (La.1975), and is consistent with the standard of review for other discretionary matters. Accordingly, we will review the trial court's factual findings under the manifest error standard, and will review the trial court's ultimate decision with respect to certification of the class using the abuse of discretion standard.

Prerequisites to Class Action
In determining whether a class action is proper under Louisiana law,[5] proof of the following requirements is necessary:
(1) A class so numerous that joinder is impracticable, and
(2) The joinder as parties to the suit of one or more persons who are
(a) members of the class, and
(b) so situated as to provide adequate representation for absent members of the class, and
(3) A "common character" among the rights of the representatives of the class and the absent members of the class.
McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 616 (La. 1984). All three of these elements must be met for a class action to be appropriate, and *120 the plaintiffs must prove each element by a preponderance of the evidence. Becnel v. United Gas Pipeline Co., 613 So.2d 1155, 1157 (La.App. 5th Cir.1993).
DOTD did not specifically assign as error the trial court's findings with respect to the first two elements. However, since it contends the evidence does not support certification, we feel that discussion of all three elements is necessary. Since the third element is the central issue of DOTD's appeal, we will begin our discussion there.

Common Character
Under Louisiana practice, there must be a "common character" among the rights of the representatives and the absent members of the class in order to make class action appropriate. LSA-C.C.P. art. 591(1); McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 616. To satisfy this element, plaintiffs must establish that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. However, the inquiry does not end there, because the "common character" element encompasses more than the simple existence of law and fact common to the class. Dumas v. Angus Chem. Co., 25,632, p. 7 (La.App. 2nd Cir. 3/30/94), 635 So.2d 446, 451; Ellis v. Georgia-Pacific Corp., 550 So.2d at 1315. The "common character" requirement restricts class actions to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 616.
When a common character of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of the procedural device: (1) effectuating the substantive law at issue in the case; (2) providing judicial efficiency in carrying out the substantive law; and (3) insuring individual fairness to all parties involved. Id. Thus, if the superiority of a class action is disputed, the trial court must determine whether these intertwined goals would be better served by some other procedural device. Id. at 617; Dumas v. Angus Chem. Co., 635 So.2d at 451.
The basis of plaintiffs' claim against DOTD is that the design and construction of the I-12 bridge over the Tangipahoa River acted as a dam and the river's flood waters were not able to escape down their natural flood channels to the south. Instead the water backed up north of the highway and eventually flowed over the highway at a point well outside of the natural flood channel. This diverted flood water engulfed the much narrower channel of the Big Branch stream to the west, causing it to flood. The proposed class consists of persons owning property in geographic areas (1) north of I-12 Washley Creek, Holden Branch, Pole Bridge Branch, and the Tangipahoa River watersheds north of I-12, including the Village of Robert, and (2) south of I-12the Big Branch watershed located west of the Tangipahoa River, but not adjacent to it.
DOTD contends no common character can possibly exist between members of the class who own property north of I-12 (upstream) and those owning property south of I-12 (downstream). Rather, it argues the rights and interests of these two groups are distinctly different and conflicting. As the basis for this argument, DOTD explains that if the alleged dam effect created by the I-12 bridge caused property north of I-12 to flood, it would have prevented such waters from reaching and flooding property south of I-12, thus protecting persons and property to the south. In essence, DOTD contends a class action is not justifiable because individual factual and legal issues raised by parties north of I-12 and by those south of I-12 predominate or overwhelm those which are common to both groups.
At first glance, this argument seems persuasive. However, DOTD neglects to point out that the downstream property south of I-12 included in the geographic boundaries of the class is not located immediately adjacent to the Tangipahoa River in the river's normal flood channel or immediately outside that channel. Instead, the downstream property *121 is located a great distance from the river's western bank and is not the property that would have necessarily flooded if the water had flowed naturally. Rather, this property south of I-12 lies generally adjacent to the Big Branch stream.
Plaintiffs allege DOTD designed and constructed the I-12 bridge over the Tangipahoa River in a negligent and improper manner, so the flood waters of the Tangipahoa River were not able to escape down their natural flood channel, but instead were diverted and flooded plaintiffs' homes and properties. Although the landowners have properties that were differently situated and thus differently affected by the rising waters, there are obviously several common issues involved: (1) the determination of the respective duties owed by DOTD; (2) design and construction of the bridge relative to negligence and strict liability claims; (3) causation; (4) liability and the extent thereof; and (5) certain damage issues. The trial court determined plaintiffs had produced factual information sufficient to demonstrate that the claims they asserted are of a common character, both between the class representatives and class members, and among class membership. Although there may be some legal questions and damage items not common to all members of the proposed class, we find no manifest error in the trial court's finding that questions of law or fact common to the members of the entire class predominate over those questions affecting only individual members.[6]

1) Effectuating Substantive Law

Class actions may effectuate substantive law by opening courts to claims not ordinarily litigated. This enables courts to examine the full implications of recognizing rights or remedies and to determine what outcome in litigation would best serve the policies underlying the causes of action. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 618. Class action procedures are fair because courts are more likely to see both the significance of the claims of a plaintiff and the consequences of imposing liability upon a defendant, and thus are more likely to arrive at a substantially just conclusion. Id. Through class action procedures, moreover, the interests of absentees, who may be affected by the litigation regardless of its class nature, are given representation in the litigation process, and thus are more likely to be given their due. Id.; Lailhengue v. Mobil Oil Co., XX-XXXX-XXXX, p. 8 (La.App. 4th Cir. 6/7/95), 657 So.2d 542, 547. However, a class action in some instances may tend to skew, rather than implement faithfully, the policy underlying a cause of action, and courts must determine whether implementation of substantive law is advanced or deterred by a class action. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 618-619; Lailhengue v. Mobil Oil Co., 657 So.2d at 547.
Although plaintiffs' claims in this case are not necessarily so small that suits would not be brought, the anticipated expenses of this kind of claim due to the need for expert testimony might make it impossible for plaintiffs to seek a judicial remedy for their claims, were a class action not available. See Lailhengue v. Mobil Oil Co., 657 So.2d at 547. Therefore, allowing these claims to proceed as a class action serves to effectuate the public policy underlying a tort action, which policy is to protect or make whole a party harmed through the fault of another. This legislative policy will not be skewed or distorted by an exaggerated deterrent effect because if judgment is rendered in favor of plaintiffs, recovery of damages will be limited to amounts which will fairly compensate them for damages attributable to this single occurrence. Furthermore, the court will be able to assess the significance of the combined individual claims and balance these against the actual and potential impact of imposing liability on DOTD based on allegations of faulty bridge design and construction. Thus, by evaluating the competing public policies and private claims, the court is more likely to arrive at a substantially just *122 conclusion using the class action than it could if each claim were brought individually in separate suits.

2) Judicial Efficiency

The second fundamental objective of a class action is to achieve economy of time, effort and expense. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 619; Lailhengue v. Mobil Oil Co., 657 So.2d at 547. There are approximately 1200 possible claimants who fit within the proposed class. The court would be greatly burdened by separate suits or by the joinder or intervention of interested parties in separately brought actions. Class action was designed to handle this type of litigation, while still preserving the integrity of the proceedings for all parties involved. Dumas v. Angus Chem. Co., 635 So.2d at 452.
Furthermore, judicial efficiency will be better served by a class action in this case because of the procedural devices available to the court. Pursuant to LSA-C.C.P. art. 593.1, the trial court has the discretion to amend or recall its certification, to enlarge, restrict or redefine the constituency of the class or issues, to adopt a management plan for the litigation, including subdividing the action or separating the issues raised, and to hold separate trials of separate issues. This is not possible in ordinary proceedings, except with the consent of all the parties. Lailhengue v. Mobil Oil Co., 657 So.2d at 548. Additionally, the trial court has control over dismissal or compromise of a class action pursuant to LSA-C.C.P. art. 594. In spite of the additional burdens and responsibilities which the class action places on the court, any error to be made in maintaining a class action should be made in favor of upholding a class action because it is always subject to modification should new developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 620.
The trial court in this case gave the parties the opportunity to present evidence at a hearing on the class certification issue. It observed the demonstrative evidence and heard the lay and expert testimony. Consequently, it was in the best position to evaluate the factual circumstances of this case and the policy of promoting judicial efficiency. It found that a class action was the superior method by which to proceed. We find no manifest error in the court's observations, nor was the decision to certify the class an abuse of discretion, given this record.

3) Fairness To The Parties

The third objective of the class action is to promote uniformity of decision to similarly situated persons, without sacrificing procedural fairness or causing undesirable results. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 621. To determine whether the class action will be fair to the parties, the court should consider the precedent value of a first decision in separately filed actions, the injustice which can result from inconsistent judgments in separate actions, and the size of the claims of absent members. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 621; Lailhengue v. Mobil Oil Co., 657 So.2d at 548; Adams v. CSX Railroads, 615 So.2d at 483-484.
The record does not reveal that any other suits were filed by flood victims who are not joined in this action, but such cases may exist. Also, some claimants may have decided not to file because this action was pending. Were multiple suits filed, some cases would likely be tried to juries, while others would not. The issues are complex and would require considerable expert testimony. From one case to the next, the qualifications and opinions of those experts could differ. Additionally, plaintiffs' claims, although based on common issues of law, have enough unique characteristics so that the possibility of inconsistent results among these 1200 similarly damaged claimants is high. In light of the above discussion, we find the trial court did not err in finding a class action is the fairest method for adjudicating these claims.
After reviewing the pleadings and evidence introduced at the certification hearing, we conclude plaintiffs have met their burden of proving that a class action in this case is superior to other available adjudicatory methods for effectuating substantive law, judicial efficiency, and individual fairness. The *123 trial court was not manifestly erroneous in finding the existence of a "common character" sufficient to justify the class action. Moreover, the trial court's conclusion that a single trial could effectively and efficiently resolve the issues of duty, liability, and damages common to the class was within its discretionary authority.

Numerosity
The first requirement, that the persons constituting the class are so numerous as to make joinder impracticable, is often referred to as "numerosity." See Ducote v. City of Alexandria, 670 So.2d 1378. There is no set number above which a class is automatically considered so numerous as to make joinder impractical as a matter of law.[7]O'Halleron v. L.E.C., Inc., 471 So.2d 752, 755 (La.App. 1st Cir.1985). Such determination is made on the facts and circumstances of each individual case. Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4th Cir.), writ denied, 526 So.2d 810 (La.1988); O'Halleron v. L.E.C., Inc., 471 So.2d at 755. Although the identification of all potential class members is unnecessary, the party seeking certification should be able to establish a definable group of aggrieved persons. Farlough v. Smallwood, 524 So.2d at 203.
This case involves a large group of potential class members who live in the designated geographic area. Allegedly the design and construction of the I-12 bridge crossing the Tangipahoa River caused flood water to back up at I-12 to the north, resulting in flooding in areas northeast of the river, including Washley Creek, Holden Branch, Pole Bridge Branch, and Robert. Portions of Robert located north of 1-12 and west of the river also flooded. When the flooding west of the river reached road level more than 3000 feet from the river's western bank, water allegedly flowed south across I-12, causing flooding of property in a particular geographical area south of the highway and west of the river. The rising waters entered homes and businesses in these areas. Plaintiffs contend approximately 400 homeowners and business owners sustained injuries as a result of the flood, allegedly caused by the design and construction of this bridge. At a rate of three family members per household, plaintiffs estimate the total number of plaintiffs to be approximately 1200. This flooding allegedly caused unreasonable inconvenience, damage to movable and immovable property, economic loss, and mental anguish to the class representatives and those similarly situated.
The members of this class are property owners, business owners, and residents within a specified geographic area. The class has established a definable group, thus reducing the risk that any individual's rights will be determined without his knowledge and opportunity to participate. See Becnel v. United Gas Pipeline Co., 613 So.2d at 1159. Therefore, the trial court did not err in finding the numerosity requirement was satisfied.

Proper Joinder
The second requirement, "proper joinder," is to ensure adequate representation of the absent class members by requiring that one or more of the class members will represent the interests of the entire class adequately.[8]Becnel v. United Gas Pipeline Co., 613 So.2d at 1158. The claims of the class representatives should be a cross-section of, or typical of, the claims of all class members. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d at 1181.
The plaintiffs' claims are for mental anguish, property damage, and/or lost income and wages, all due to flooding allegedly caused by the design and construction of the I-12 bridge over the Tangipahoa River. At *124 the hearing on the class certification, seven proposed class representatives testified regarding the damages they suffered as a result of the flooding. The testimony of these class representatives demonstrates they are members of the class and are similarly situated to the other claimants. See Adams v. CSX Railroads, 615 So.2d at 481. While each member has not suffered every type of alleged injury, the representatives' claims are typical of the majority of the class and their damages represent a cross-section of the typical property, emotional, and economic injuries suffered by the members of the class. See Lailhengue v. Mobil Oil Co., 657 So.2d at 546. Furthermore, they will adequately and willingly represent the absent members. Therefore, we conclude the trial court had sufficient evidence before it to support its factual finding that the class representatives would fairly insure adequate representation for absent members of the class.

Conclusion
Based on the foregoing, we conclude plaintiffs have fulfilled both the statutory and jurisprudential requirements for class action, and the trial court appropriately exercised its discretion in certifying the class.[9] The recent jurisprudential trend is to require the trial court to grant certification when the elements have been satisfied. Dumas v. Angus Chem. Co., 635 So.2d at 453. This trend is consistent with the statements made by the supreme court in McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 620, which direct that if there is an error to be made, it should be in favor of, and not against, the maintenance of the class action, because this action is always subject to modification should later developments during the course of the trial so require.[10]Dumas v. Angus Chem. Co., 635 So.2d at 453; see LSA-C.C.P. art. 593.1(B). If the court determines at any time that the problems outweigh the advantages of the class action, or that the suit does lack the prerequisites for a class action, the class can be modified or certification recalled. See McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 620-621. We conclude there was no manifest error in the factual findings upon which the trial court based its decision in this case and the certification of the class was an appropriate exercise of its much discretion.

Decree
For the foregoing reasons, the judgment certifying the class is affirmed. Costs of this appeal in the amount of $1,113.80 are assessed against the State of Louisiana.
AFFIRMED.
NOTES
[1] Judge J. Michael McDonald of the Nineteenth Judicial District Court is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] This group is referred to collectively as "plaintiffs."
[3] There were various hearings on Mississippi's exceptions, and plaintiffs amended their petition several times to clarify their claims against this defendant and to better define the class.
[4] Although this judgment is interlocutory in nature, where irreparable injury may result, the judgment is appealable. LSA-C.C.P. art.2083; Adams v. CSX Railroads, 615 So.2d 476, 480 n. 1 (La.App. 4th Cir.1993); State ex rel Guste v. General Motors Corporation, 354 So.2d 770, 773 (La. App. 4th Cir.1978). DOTD did not appeal the court's decision on its exception of prescription.
[5] LSA-C.C.P. art. 591 provides:

A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
(1) Common to all members of the class; or
(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right.
LSA-C.C.P. art. 592 provides:
One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members.
[6] Furthermore, individual questions of quantum do not preclude a class action when predominant liability issues are common to the class. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 620.
[7] The court in Vela v. Plaquemines Parish Govt., XX-XXXX-XXXX, p. 2 (La.App. 4th Cir. 6/29/95), 658 So.2d 46, 48, suggested the magical number is 40, and that a presumption arises that joinder is impractical if more than 40 class members exist. We express no opinion on this pronouncement.
[8] No specific ruling as to the class representatives is required. The trial court's certification of the class presumes that the representation is adequate. Atkins v. Harcross Chemicals, Inc., XX-XXXX-XXXX, p. 5 (La.App. 4th Cir. 5/17/94), 638 So.2d 302, 306, writs denied, 94-2158, 94-2161 (La.11/11/94), 644 So.2d 396.
[9] We do not address DOTD's contentions regarding the testimony of Dr. Alim Hannoura because these arguments focus on the merits of plaintiffs' claim rather than the appropriateness of class certification. The court did not err in admitting his opinion or in relying on it in reaching its certification decision.
[10] This court recognizes the existence of many unresolved issues in this case, some of which pertain to the trial court's jurisdiction over Mississippi. As this case progresses and definitive rulings are made, it may become necessary for the trial court to exercise the power bestowed on it by LSA-C.C.P. art. 593.1 and reexamine its decision to certify the class or to adjust the geographic boundaries of the class. Therefore the pendency of jurisdictional issues does not preclude certification of the class. We note also that plaintiffs, in briefs and at oral arguments, indicated they intend to dismiss their claims against Mississippi.