730 So.2d 1091 (1999)
Leatha HAMPTON, et al.
v.
ILLINOIS CENTRAL RAILROAD CO., Borden Chemical and Plastics Limited Partnership, and Farley Kinchen.
Trula McGhee, et al.
v.
Illinois Central Railroad Co., Borden Chemical and Plastics Limited Partnership, and Farley Kinchen.
Teal Meyers, Sr., et al.
v.
Illinois Central Railroad Co., Borden Chemical and Plastics Limited Partnership, and Farley Kinchen.
James O. Todd, Jr., and Susan W. Todd
v.
Illinois Central Railroad Co., Borden Chemical and Plastics Limited Partnership, and Farley Kinchen.
Bernice Ard, et al.
v.
Illinois Central Railroad Co., Borden Chemical and Plastics Limited Partnership, and Farley Kinchen.
Richard Lindsey, et al.
v.
Illinois Central Railroad Co., Borden Chemical and Plastics Limited Partnership, and Farley Kinchen.
Nos. 98 CA 0430 to 98 CA 0435.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
*1092 Richard McShan, Amite Frank C. Dudenhefer, New Orleans, Counsel for Appellees, Leatha Hampton, et al.
Cassandra Butler, Independence, Counsel for Appellees, Janice Brim, et al.
John Caskey, Greensburg, Brent D. Burley, Baton Rouge, Counsel for Appellees, Beatrice Ard, et al.
Scott Sledge, Hammond, Counsel for Appellees, James O. Todd, Jr., et al.
Lawrence Abbott, Patrice Oppenheim, New Orleans, Counsel for Appellant, Illinois Central Railroad Co.
Albert Hanemann, Jr., New Orleans, Counsel for Appellant, Borden Chemical and Plastics Limited Partnership.
Mark C. Dodart, New Orleans, H. Alston Johnson, Freddie Pitcher, Jr., Baton Rouge, Counsel for Appellant, C F Industries, Inc.
Before: FOIL, KUHN, and WEIMER, JJ.
WEIMER, J.
On February 14, 1995, a railroad tank car belonging to Borden Chemicals was stopped by law enforcement officials in an area north of the community of Fluker, Louisiana, just south of the Town of Tangipahoa, Louisiana, for emergency handling of a leakage of anhydrous ammonia. A several mile stretch of Louisiana Highway 51 extending from the Town of Tangipahoa to the Intersection of Louisiana Highway 10 in Fluker was blocked off for approximately 21 hours while the emergency was handled.
Over 2,000 local residents retained counsel in the months following the incident, and there are several hundred named plaintiffs in the suits filed and consolidated in the Twenty-First Judicial District Court for the Parish of Tangipahoa and now on appeal in this court.[1] On December 6, 1996, plaintiff Bernice Ard filed a motion for class action certification. On February 4, 1998, the trial court held a hearing on the motion, with plaintiffs and defendants filing numerous exhibits, including depositions of proposed class representatives, environmental personnel, law enforcement officers, and experts.
Following the hearing, the trial court rendered judgment certifying the class as follows:
All persons or entities claiming property damages or personal injuries as a result of an anhydrous ammonia leakage from a railroad car between the Cities of Fluker *1093 and Tangipahoa, Louisiana[,] on February 14 and/or 15th, 1995 and who shall within the time specified in the notices issued under the authority of this Court, file with the Court their request[s] to have their respective claims included in the class action.
The judgment also provided that the designated class representatives would be allowed to represent the class as presently defined, and that plaintiffs' counsel would comprise the plaintiffs' steering committee. The court declined, at that time, to establish geographic boundaries for the class. In reasons for judgment, the trial court specifically found the plaintiffs satisfied the requirements of numerosity and commonality required by LSA-C.C.P. art. 591.
The multiple defendants perfected this suspensive appeal.[2] Their assignment of error is:
The trial judge erred in certifying these consolidated suits as a class action for trial purposes, in that the record (1) does not establish numerosity of plausible claims; (2) does not establish that the common claims will predominate over the individual; (3) does not permit a determination of reasonable geographic boundaries for the class, thus undermining the applicability of res judicata to any judgment; and (4) does not establish the typicality of the proposed class representatives.
The sole issue for our determination is whether the class action is the superior procedural vehicle to resolve the claims that have already been asserted and which might arise from the incident of February, 1995. However, before reaching the merits of defendants' appeal, we address two threshold issues.
First, plaintiffs challenge defendants' entitlement to an appeal, asserting defendants have failed to show irreparable injury to justify an appeal of the interlocutory judgment certifying the class action. There is no merit to plaintiffs' position.
Louisiana courts have held repeatedly that an interlocutory ruling certifying a large class of plaintiffs may, in some cases, create irreparable harm to the defendants and thus justify review by appeal. Eastin v. Entergy Corporation, 97-1094, p. 3 (La.App. 5 Cir. 4/15/98), 710 So.2d 835, 837, citing Banks v. New York Life Insurance Company, 97-1996 (La.7/29/97); 697 So.2d 592. Irreparable harm exists because:
[i]f, at a later time, after trial on the merits and review, it is determined that the trial judge erred in permitting the matter to be tried as a class action, immeasurable expense and innumerable wasted court days will have resulted. Furthermore, litigants in other matters will have been needlessly delayed.
State ex rel Guste v. General Motors Corporation, 354 So.2d 770, 774 (La.App. 4 Cir. 1978), aff'd on rehearing, 370 So.2d 477 (1978). Accordingly, this case is properly before us on appeal.
Second, plaintiffs correctly note that class certification is purely procedural, that is, whether the class action is procedurally preferable, not whether any of the plaintiffs will be successful in urging the merits of their claims. The trial court is not authorized by statute or by history of the class action procedure to assess the likelihood of success on the merits before approving a class action. Miller v. Mackey International, Inc., 452 F.2d 424, 427-428 (5 Cir.1971). Nor does the determination whether there is a proper class depend on the existence of a cause of action. A suit may be a proper class action and still be dismissed for failure to state a cause of action. Id. With these underlying principles in mind, we now examine the record to determine the propriety of the certification of the class.

STANDARD OF REVIEW
The appropriate standard of review for an appellate court in considering the propriety of a trial court's certification of a class action or denial of certification has been the subject of much discussion in the jurisprudence. *1094 See Boudreaux v. State, Dept. of Transportation and Development, 96-0137, pp. 4-5 (La.App. 1 Cir. 2/14/97), 690 So.2d 114, 118-119, and cases cited therein. This court reviews the trial court's factual findings under the manifest error standard, and reviews the trial court's ultimate decision with respect to certification of the class using the abuse of discretion standard. Id. 96-0137 at 5, 690 So.2d at 119.

LEGAL PRECEPTS OF CLASS ACTION
This court recently addressed the requirements for certification of a class action, as follows:
For a class to be certified, the proposed class must meet the requirements of commonality, numerosity, and adequate representation. La. C.C.P. art. 591. The burden is on the party seeking the class. Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049 p. 13 (La.App. 1st Cir.3/27/97); 691 So.2d 760, 768, writ denied, 97-0800, 97-0830 (La.4/8/97); 693 So.2d 147. Although the requirements for class certification are not the likelihood that the class will prevail, sufficient facts must be alleged to show that the requirements of a class action exist. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974); Miller v. Mackey International, Inc., 452 F.2d 424, 427-28 (5th Cir.1971).
Blank v. Sid Richardson Carbon and Gasoline Company, 97-0872, pp. 2-3 (La.App. 1 Cir. 5/15/98), 712 So.2d 630, 632.
Additionally, an integral part of the definition of the class to be certified is a determination of the geographic area of the class. See Ford v. Murphy Oil U.S.A., 94-1218, p. 14 (La.App. 4 Cir. 8/28/96), 681 So.2d 401, 408-409, rev'd on other grounds, 96-2913 (9/9/97), 703 So.2d 542, wherein the defendants asserted that without determining the geographic boundaries of certain subdivisions of the class, the trial court could not determine numerosity, commonality, or the adequacy of class representatives. The court stated that a class definition provides the framework against which the court can apply the statutory requirements in order to determine whether a class action may be maintained. When the definition is vague, a person is prevented from readily determining if he or she is a member of the class. Id. In Ford, the court remanded for a determination of proper subdivisions of the class, including geographic boundaries.
The establishment of geographic boundaries of a class must be based on evidence in the record. Livingston Parish Police Jury v. Acadiana Shipyards, Inc., 598 So.2d 1177, 1184 (La.App. 1 Cir.), writs denied, 605 So.2d 1122 (1992). In a mass tort case, when the evidence presented at the class certification hearing is insufficient to support the area defined by the trial court, the trial court abuses its discretion by establishing such boundaries. See Lailhengue v. Mobile Oil Company, 94-2114, 94-2115, 94-2116, pp. 12-13 (La.App. 4 Cir. 6/7/95), 657 So.2d 542, 549, in which the trial court defined the geographic area as all of St. Bernard Parish and all of Algiers in Orleans Parish, following an explosion and fire at the Mobile Refinery in Chalmette, Louisiana. However, there was no evidence presented that the fire impacted the area defined by the trial court. There was no expert testimony presented to indicate the areas which had a probability of being affected by the fire, and the maps introduced by plaintiffs failed to show that the claimants resided throughout the parish of St. Bernard or throughout Algiers. Vacating the trial court's definition of the class, the appellate court held that establishing geographic boundaries not supported by the evidence resulted in a class definition that was too broad and over-inclusive.

NUMEROSITY REQUIREMENT
The defendants' first argument is that the record does not establish numerosity of plausible claims. We agree.
The plaintiffs point to a population of over 2,000 persons within a 14-15 mile stretch of Highway 51 to prove that the number of persons with potential identifiable claims is so large that joinder of claimants in individual suits would be impracticable. However, numerosity is not shown by mere allegations of a large number of potential *1095 claimants. Pulver v. 1st Lake Properties, Inc., 96-248, p. 5 (La.App. 5 Cir. 9/18/96), 681 So.2d 965, 968.
The burden was on the plaintiffs to make a prima facie showing that a definable group of aggrieved persons exists. See Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049, pp. 13-14 (La.App. 1 Cir. 3/27/97), 691 So.2d 760, 768, writ denied, 97-0800, 97-0830 (La. 4/8/97), 693 So.2d 147. When plaintiffs fail to make a prima facie showing of one of the elements necessary for maintenance of a class action, denial of certification is justified. O'Halleron v. L.E.C., Inc., 471 So.2d 752, 756, n. 3 (La.App. 1 Cir.1985). The plaintiffs herein introduced into evidence the depositions of six proposed class representatives who were in the area the plaintiffs urge was affected by the ammonia leak. The testimony of these persons reveals they had various complaints of minor physical problems and emotional problems which they associated with the ammonia leak, the most common of which were asthma and a burning sensation in the eyes. The testimony of some of the proposed class representatives regarding the manifestations of their injuries did not correspond to the time of the ammonia leak. A review of this testimony indicates internal inconsistencies. Furthermore, the plaintiffs did not present any expert testimony causally linking these complaints to the ammonia leak sufficient to satisfy the requirement that there is a definable group of persons who were in fact aggrieved by this incident.
On the other hand, the defendants presented the reports of two expert witnesses. The first was Gale F. Hoffnagle, a certified consulting meteorologist and qualified environmental professional, who is the senior vice-president and technical director of TRC Environmental Corporation. Defendants engaged her to review the events of the ammonia leak. Ms. Hoffnagle reviewed the documents concerning the railroad car, its filling, weighing, and incident reports; the depositions of the proposed class representatives; and the depositions of Louisiana DEQ personnel. Her report included a calculation of the release of ammonia from the railroad car release valve and a model of the spread of ammonia from the railroad car to the locations identified by the plaintiffs and to sampling locations identified by DEQ. Additionally, she compared the modeled exposures to the Emergency Response Planning Guideline (ERPG) values for ammonia. Ms. Hoffnagle concluded that none of the proposed class representatives were exposed to concentrations of ammonia of any concern, as all exposures were less than the ERPS-1 value.
The second expert witness presented by defendants was board-certified toxicologist Raymond D. Harbison, Ph.D., who is a professor of environmental and occupational health in the College of Public Health and professor of pharmacology in the College of Medicine at the University of South Florida. Dr. Harbison reviewed the exposure estimates prepared by Ms. Hoffnagle to determine if the individuals alleging ammonia-induced injuries had, indeed, been exposed to sufficient ammonia to cause adverse health effects. Dr. Harbison looked at the potential ammonia exposure for the proposed class representatives, Ada Daniels, Sharon Strickland, Frances Lebo, and Jerome Fultz. Dr. Harbison concluded the data demonstrated: "1) That the plaintiffs differ regarding their alleged exposure potential, 2) That the alleged exposures ranged from imperceptible to possibly within the odor detection range, and 3) That there were no ammonia levels sufficient to produce adverse health effects." Additionally, he noted that the remaining proposed class representatives, the Boykins, lived 3.3 miles south and upwind of the ammonia release and could have had no exposure in that direction opposite the dispersal pathway.
The plaintiffs did not present any evidence to refute the expert evidence presented by the defendants.
The record establishes that only one family in the area was ordered to evacuate. Two of the class representatives evacuated voluntarily, and the other four did not evacuate. Only one class representative worked within the roadblock area, and his deposition testimony is flawed with inconsistencies concerning the dates involved. None of the proposed class representatives sought medical assistance *1096 contemporaneously with the incident. Although they testified they had health problems, the record does not establish a causal link between those problems and the incident.
Not only is the record devoid of evidence that causally relates the class representatives' alleged physical symptoms to the incident, but the law enforcement personnel who were at the scene in locations closer to the leak than the class representatives testified they experienced no symptoms. This testimony supports the defendants' contention that the risk of chemical exposure was in an area less than 300 feet from the tank car.
Thus, the record does not support a conclusion that the proposed class representatives' testimony was prima facie evidence of a large number of aggrieved persons. The trial court's finding that numerosity was satisfied was manifestly erroneous because there was insufficient evidence which causally related the alleged physical symptoms of the proposed class representative to the incident.
The error concerning numerosity is compounded by the failure to establish any geographic boundaries whatsoever. Thus, the trial court's defining the class as "[a]ll persons or entities claiming property damages or personal injuries as a result of an anhydrous ammonia leakage from a railroad car between the Cities of Fluker and Tangipahoa, Louisiana" was an abuse of discretion. The definition of the class was based on the trial court's conclusion that the plaintiffs satisfied the requirement of numerosity. However, without first determining the physical area of the alleged mass tort, it was impossible for the trial court to determine if there was a sufficient number of aggrieved persons. Despite the expert and lay testimony presented by the defendants at the certification hearing, the trial court refused to address the issue of geographic boundaries, thus committing error. Unlike Lailhengue v. Mobile Oil Company, 94-2114, 94-2115, 94-2116, at 12, 657 So.2d at 549, where there was no reliable, concrete evidence of the boundaries of exposure to the fire and explosions, we have in the instant case the defendants' showing which was sufficient to suggest the likelihood of an affected area so small as to include only a limited number of persons.
Our review of the record leads us to find the proposed class lacks numerosity, as the proposed class representatives do not represent a sufficiently large number of persons aggrieved by the ammonia leak. The record also reveals the trial court could not determine numerosity without first determining the geographic boundaries of the proposed class. These errors require reversal of the class certification.
We are aware of the cases holding that the lack of geographic limits will not always defeat a class certification by the trial court. See Cotton v. Gaylord Container, 96-1958, 96-2029, 96-2049, at 15, 691 So.2d at 769, and cases cited therein. However, in the instant case, reversal of the class certification is required because of the lack of evidence presented by plaintiffs concerning the affected area and the abundance of evidence by the defendants that the affected area was so limited as to exclude sufficient claimants to satisfy the numerosity requirement.
We do not hold that to support certification of a class action the plaintiffs must present sufficient evidence as would be necessary to prevail on the merits. We are not deciding whether the plaintiffs have a cause of action. The certification or denial of certification of a class action is not determinative of whether a cause of action exists. Miller v. Mackey International, Inc., 452 F.2d at 427. We do find that based on the record before us in this case, the plaintiffs have not sustained their burden of proof that there was a sufficiently large number of aggrieved persons to justify certifying this matter as a class action. Clearly, a tank car in a train spewing noxious gas can cause injuries to numerous persons such that a class action would be the superior procedural vehicle. The class action procedure should be the means to an end: the expedient and efficient resolution of disputes which is fair to all parties. Allowing relatively small claims to proceed as a class action serves to effectuate the public policy underlying a tort action, which policy is to protect or make whole a party harmed through the fault of another. *1097 Boudreaux v. State, Dept. of Transportation and Development, 96-0137 at 9, 690 So.2d at 121. However, the evidence before us was insufficient to warrant certification as a class action.
Accordingly, we reverse the judgment of the trial court certifying the class and remand for further proceedings consistent with this opinion. We assess appellees with all costs of this appeal.
REVERSED AND REMANDED.
KUHN, J., concurs and assigns reasons.
KUHN, Judge, concurring.
As a procedural device, properly used class actions are of tremendous benefit to the court system. The popularity of the class action suit has, however, brought about attacks on its procedural utility not because it is ineffectual in dealing with unwieldy number of parties who would probably be joined in litigation, but because of concerns unrelated to the litigation involved. Carr v. GAF, Inc., 97-0838, p. 1 (concurring opinion) (La.App. 1st Cir.4/8/98); 711 So.2d 802, 807, writ denied, 98-1244 (La.6/19/98); 721 So.2d 472.
Class action certification has become the "Holy Grail" for plaintiffs' counsel in class action suits. The certification process has become an end unto itself. The question of whether to certify ought to be considered a means of insuring the validity of a class action, i.e., a procedural device designed to assist courts and litigants. It appears, however, that the practice which has become acceptable is either to use class certification to extort settlement from defendants who are not liable or to prevent recovery to plaintiffs who are entitled to an award, simply because the individual claims are nominal.
There must be a recognition of these reciprocal concerns. Courts must balance the use of the class action procedure with concerns that there may be plaintiffs who manufacture a class action or attempt to take advantage of an incident where no one is actually damaged and defendants who trivialize legitimate but nominal damages. Furthermore, to insure that what is just to the litigants is ultimately achieved, courts must begin to manage class action litigation completely, that is, even until and including final disbursement of recovery to class members. Such management will insure that the litigants' interests, and theirs alone, are served. Ultimately, class action certification should only be used when it is the best procedural device for the court to achieve a just, fair, and efficient result for the litigants.
NOTES
[1] The consolidated appeals are in the cases: Leatha Hampton, et al. v. Illinois Central Railroad Company, et al., No. 9501824; Trula McGhee, et al. v. Illinois Central Railroad Co., et al., No. 9501984; Teal Meyers, Sr., et al. v. Illinois Central Railroad Co., et al., No. 9600333; James O. Todd, Jr. and Susan W. Todd v. Illinois Central Railroad Co., et al., No. 9600365; Bernice Ard, et al. v. Illinois Central Railroad Co., et al., No. 9600445; and Richard Lindsey, et al. v. Illinois Central Railroad Co., et al., No. 9600545.
[2] One original brief was filed by counsel for defendants, CF Industries, Inc.; Borden Chemical and Plastics Limited Partnership and Farley Kinchen; and Illinois Central Railroad Company.