927 So.2d 1113 (2005)
Jeffery W. MIRE, Shane M. O'Quin, and Barbara T. Estes, and a Class of Similarly Situated Individuals
v.
EATELCORP., INC., Primco Personal Communications, L.P. d/b/a Verizon Wireless and Sprint PCS, Inc.
No. 2004 CA 2603.
Court of Appeal of Louisiana, First Circuit.
December 22, 2005.
Writ Denied April 24, 2006.
*1114 Leonard Cardenas, III, Randall Eugene Estes, Baton Rouge, Counsel for Plaintiffs/Appellants Jeffery Mire, et al.
Thomas A. Roberts, Baton Rouge, Counsel for Defendant/Appellee Verizon Wireless.
Glenn M. Farnet, Baton Rouge, Counsel for Defendant/Appellee Eatelcorp, Inc.
Before: CARTER, C.J., DOWNING, and GAIDRY, JJ.
GAIDRY, J.
The plaintiffs-appellants, Jeffery W. Mire and Barbara T. Estes (plaintiffs), appeal the order of the trial court recalling its initial order certifying this action as a class action. We affirm for the reasons set forth below.

FACTUAL BACKGROUND AND PRIOR PROCEEDINGS
The factual and initial procedural history of this action was briefly outlined in this court's earlier opinion in Mire v. Eatelcorp, Inc., 02-1705, pp. 2-3 (La.App. 1st Cir.5/9/03), 849 So.2d 608, 611-12, writ denied, 03-1590 (La.10/3/03), 855 So.2d 317. We supplement that description with the following.
In their original petition filed on September 1, 2000, plaintiffs initially presented a sequence of "general allegations" outlining their cause of action. In summary, plaintiffs alleged that Eatelcorp, Inc. (Eatelcorp) sold personal communications services (PCS) digital cellular telephones for use with Eatelcorp's service plan featuring a month-to-month term. Each telephone sold was programmed by the manufacturer with a random six-digit number known as a "subsidy lock," used to activate the telephone on a particular PCS provider's network. *1115 Plaintiffs alleged that Eatelcorp failed to disclose the existence of the subsidy lock, which prevented any Eatelcorp customer from using his telephone with another PCS provider unless he paid a fee to Eatelcorp to access the subsidy lock code. Plaintiffs made supplemental factual allegations categorized under five different "counts" or theories of recovery: breach of contract, negligent omission of material information, fraud and inducement by omission, unfair trade practices, and conversion.
Following removal of the action to federal court and subsequent remand, Eatelcorp responded to plaintiffs' petition on July 31, 2001 with multiple exceptions, including a declinatory exception of lack of subject matter jurisdiction asserting the primary or exclusive jurisdiction of the Federal Communications Commission (FCC) or the Louisiana Public Service Commission (LPSC) over plaintiffs' claims.[1] On September 10, 2001, the trial court heard Eatelcorp's exceptions and dismissed the declinatory exception of lack of subject matter jurisdiction by order signed September 21, 2001.
On October 11, 2001, Eatelcorp moved to dismiss the class action allegations based upon plaintiffs' failure to move for certification within ninety days of service, pursuant to La. C.C.P. art. 592(A)(1).
On October 16, 2001, plaintiffs filed a motion to certify a class of plaintiffs for a class action. In a supplemental and amended petition filed on the same date, plaintiffs made additional allegations setting forth a cause of action in redhibition. The most pertinent of those allegations are as follows:
II.
Any and all PCS telephones sold by the defendant to all of its subscribers including the plaintiffs were defective and contained a vice or defect which was and is redhibitory, containing a subsidy lock that rendered each telephone useless with any other PCS wireless telephone service provider. . . .
III.
The plaintiffs further show that the subsidy lock in each telephone sold by the defendant was a redhibitory defect because of the limitations it placed on each telephone, and the cost to remove it, that could not have been discovered at the time of sale by a reasonably prudent buyer.
. . . .
V.
The subsidy lock was coded into each telephone by the defendant, and the defendant failed to disclose a removal charge to each buyer and plaintiffs herein, rendering the defendant a "manufacturer" for redhibition purposes and therefore deemed to be in bad faith in selling its product containing a redhibitory defect.
(Emphasis in original.)
The trial court granted plaintiffs' motion to certify the class action, and its order was signed on April 2, 2002. Eatelcorp appealed. In the course of oral argument before this court, plaintiffs' counsel expressly abandoned all theories of recovery except that of redhibition.[2] This court affirmed *1116 the order of class certification on the sole remaining theory of redhibition. We stated that the relevant inquiry on commonality of issues "does not involve the buyer's subjective knowledge or reliance, but rather is an objective inquiry into the deficiency and whether it diminishes the product's value or renders it so inconvenient that the buyer would not have purchased it had he known of the deficiency." Mire, 02-1705 at pp. 5-6, 849 So.2d at 613-14.
Following our earlier decision in this matter, Eatelcorp filed a renewed declinatory exception of lack of subject matter jurisdiction on the grounds that plaintiffs' claims constituted a challenge to the subsidy lock within the primary or exclusive jurisdiction of the FCC. In the course of oral argument on that exception, plaintiffs' counsel acknowledged that plaintiffs were not putting forth the subsidy lock as the redhibitory defect upon which their cause of action for redhibition was based. The trial court accordingly dismissed the renewed declinatory exception of lack of subject matter jurisdiction.
Eatelcorp then moved to decertify the class, on the grounds that redhibition was no longer a viable cause of action based upon plaintiffs' express stipulation. The motion to decertify the class was heard on August 2, 2004, and following argument, the trial court ruled in favor of Eatelcorp, granting its motion. On August 5, 2004, the trial court signed its order recalling and vacating the class certification. Plaintiffs moved for a new trial, but that motion was denied by the trial court by order signed October 7, 2004. Plaintiffs now appeal.

STANDARD OF REVIEW
The standard of appellate review of a trial court's certification of a class action or denial of certification is a two-step analysis. The trial court's factual findings are subject to review under the manifest error standard, and its ultimate decision regarding certification is then reviewed under the abuse of discretion standard. Boyd v. AlliedSignal, Inc., 03-1840, pp. 8-9 (La.App. 1st Cir.12/30/04), 898 So.2d 450, 456, writ denied, 05-0191 (La.4/1/05), 897 So.2d 606. In reviewing a decision to certify a class, wide latitude must be given to the trial court in considerations involving policy matters and factual analysis. Mire, 02-1705 at p. 3, 849 So.2d at 612.

ASSIGNMENTS OF ERROR
We paraphrase plaintiffs' assignments of error:
The trial court committed reversible error in decertifying the class (1) by failing to recognize the "law of the case" doctrine applicable by reason of this court's prior opinion affirming class certification of plaintiffs' redhibition claims, and (2) in concluding that there has been a change in plaintiffs' claims that negates a cause of action in redhibition.

ANALYSIS
Louisiana Code of Civil Procedure article 591(A) establishes the following required elements for certification and maintenance of a class action:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the *1117 constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
All of the elements of numerosity, commonality, typicality, adequate representation, and objectivity (definability) must be present to maintain a class action. La. C.C.P. art. 591(B); Boyd, 03-1840 at p. 10, 898 So.2d at 457. As to the element of commonality, La. C.C.P. art. 591(B)(3) further requires that the common questions of law or fact must predominate over any questions affecting only individual members. Further, "[c]ertification shall not be for the purpose of adjudicating claims or defenses dependent for their resolution on proof individual to a member of the class." La. C.C.P. art. 591(C).
Class action certification is purely procedural. Hampton v. Illinois Central Railroad Company, 98-0430, p. 6 (La.App. 1st Cir.4/1/99), 730 So.2d 1091, 1093. Thus, the likelihood of any plaintiff's success on the merits is not properly part of the certification process. Mire, 02-1705 at p. 5, 849 So.2d at 613.
Louisiana Code of Civil Procedure art. 592(A)(3)(c) sets forth the authority of the trial court in regulating the conduct of a class action prior to the ultimate determination of the merits:
In the process of class certification, or at any time before a decision on the merits of the common issues, the court may alter, amend, or recall its initial ruling on certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.
Since the rendition of our earlier opinion in this matter, plaintiffs have on numerous occasions expressly stipulated through counsel, both in open court and in brief, that they are not contending that the subsidy lock constituted a redhibitory defect. With that preliminary point settled beyond peradventure, we undertake the resolution of the issues before us.
We initially address plaintiffs' contention that the "law of the case" doctrine applies to bar decertification of the class action, as our prior opinion recognized the adequacy of their claims in redhibition as presently framed. We disagree. The certification of a class action is not determinative of whether a cause of action exists. Hampton, 98-0430 at p. 11, 730 So.2d at 1096. We further disagree with plaintiffs' contention that this court in its earlier opinion recognized the validity of their current characterization of the redhibitory defect as the "effect" of the subsidy lock, rather than "the subsidy lock in and of itself." The opinion plainly states this court's understanding of plaintiffs' position to be that the undisclosed redhibitory defect or "deficiency" was "[the] subsidy lock that renders [the telephones] useless and inoperable with any other service provider upon termination of their services with Eatel." Mire, 02-1705 at p. 5, 849 So.2d at 613.
Under the "law of the case" doctrine, an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case. H.R. 10 Profit Sharing Plan v. Mayeux, 03-0691, p. 2 (La.App. 1st Cir.9/17/04), 893 So.2d 887, 893 (on rehearing), writ denied, 05-0868 (La.5/13/05), 902 So.2d 1031. But the discretionary doctrine applies only to parties who have previously had the identical question presented and decided by an appellate court. Id., citing Avenue Plaza, L.L.C. v. Falgoust, 96-0173, p. 6 (La.7/2/96), 676 So.2d 1077, 1079. This court was not presented with the issue of whether certification was appropriate under the theory of redhibition for any alleged redhibitory defect other than the subsidy lock. Thus, the identical question presented to us earlier is not present here, *1118 and we are not "locked" in our earlier ruling.
A trial court has broad discretion in deciding whether to certify a class; it also has the same discretion to amend or reverse its decision at any time. Mathews v. Hixson Brothers, Inc., 03-1065, p. 4 (La.App. 3rd Cir.2/4/04), 865 So.2d 1024, 1028, writ denied, 04-0554 (La.4/30/04), 872 So.2d 491. When subsequent developments in the course of the proceedings eliminate or substantially impair any of the requisite elements for maintenance of a class action, decertification is appropriate and within the discretion of the trial court. See Richardson v. American Cyanamid Company, 99-675, pp. 7-10 (La.App. 5th Cir.2/29/00), 757 So.2d 135, 138-39, writ denied, 00-0921 (La.5/12/00), 761 So.2d 1291. Accordingly, neither the trial court's initial order of class certification nor this court's opinion affirming that order bars reconsideration of the propriety of maintaining the class action if the fundamental nature of its cause of action changes.
In their appellate brief, plaintiffs attempt to characterize the telephone itself as the redhibitory defect, rather than the subsidy lock.[3] It is implicit in La. C.C. art. 2520's definition of redhibitory defect that such a defect is a characteristic or component of the thing sold, rather than the entire thing itself.[4] Plaintiffs recognized as much in the allegations of their supplemental and amending petition. If the thing sold is by its nature not reasonably fit for its ordinary or intended use, or differs in kind or quality from that specified or represented, the buyer's rights are governed by other rules of conventional obligations, rather than redhibition. La. C.C. arts. 2524, 2529.[5]
If the subsidy lock itself has been eliminated as the alleged redhibitory defect, plaintiffs' residual factual allegations (as narrowed by stipulation) simply do not state a cause of action in redhibition, although they do state a cause of action for breach of contract, on various grounds. As unequivocally stated in the official comments to La. C.C. art. 2529, that article *1119 was revised to legislatively overrule prior jurisprudence interpreting the pre-1995 version of article 2529 as permitting assertion of redhibition even though no redhibitory defects were present. La. C.C. art. 2529, Revision Comment (c)  1993. The trial court found that the current posture of plaintiffs' cause of action is governed by La. C.C. art. 2529. We agree, but with the observation that La. C.C. art. 2524 might also apply.
If plaintiffs' remaining cause of action falls outside redhibition and involves individual issues and subjective considerations governed by other rules of conventional obligations, class certification is not appropriate. See Banks v. New York Life Insurance Company, 98-0551, p. 9 (La.7/2/99), 737 So.2d 1275, 1281, cert. denied, 528 U.S. 1158, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). The record shows that plaintiffs have repeatedly conceded this point in the event that their cause of action sounds in breach of contract rather than redhibition.[6]
Plaintiffs suggest that the trial court's claimed error was caused by its inexperience, confusion, and lack of familiarity with the background and prior proceedings conducted before its predecessor in office, who was elected to this court following the rendition of the class certification order. Despite plaintiffs' legal maneuvering to maintain the "Holy Grail" of class certification within their grasp[7], the record and transcripts of the proceedings below conclusively demonstrate that the trial court thoroughly reviewed the pleadings and memoranda and fully understood the prior rulings and the parties' respective positions before making its ultimate decision.
A cause which has no effect has caused nothing; similarly, a "defect" which has no effect is no defect.[8] Without the subsidy lock (the cause), the effect of which plaintiffs complain would not exist. Plaintiffs seek to isolate or divorce the effect of the subsidy lock from the subsidy lock itself, and to combine it with Eatelcorp's alleged failure to disclose the effect in an attempt to fashion a hybrid redhibitory defect beyond the scope of the FCC's jurisdiction. Unlike Dr. Frankenstein, plaintiffs have failed to animate their patchwork creation. In their attempt to do so, they were forced to sacrifice the crucial element of commonality by introducing subjective issues inherent in a cause of action based on contractual misrepresentation. We agree with Eatelcorp that plaintiffs cannot have it both ways.
In summary, by renouncing the subsidy lock itself as a redhibitory defect, plaintiffs effectively renounced redhibition as the viable theory of their case and consequently removed their action from maintenance as a class action. The trial court's factual *1120 findings in that regard were not manifestly erroneous, its legal conclusions were correct, and its decision to recall the class certification was a sound exercise of its vast discretion.

DECREE
The order of the trial court is affirmed. All costs of this appeal are assessed to the plaintiffs-appellants, Jeffery W. Mire and Barbara T. Estes.
AFFIRMED.
CARTER, J., concurs with reasons.
DOWNING, J., dissents and assigns reasons.
DOWNING, J., dissents and assigns reasons.
I respectfully dissent and would reverse the judgment of the trial court that recalled and vacated the class certification order in this matter. When this court previously ruled in this matter, we analyzed the plaintiffs' theory of recover as follows:
Here, the plaintiffs argue that the predominant common factual and legal issue is Eatel's failure to adequately disclose to its customers that the telephones they purchased contain a subsidy lock that renders them useless and inoperable with any other service provider upon termination of their services with Eatel. According to plaintiffs, the inquiry under a redhibition claim does not involve the buyer's subjective knowledge or reliance, but rather is an objective inquiry into the deficiency and whether it diminishes the product's value or renders it so inconvenient that the reasonable buyer would not have purchased it had he known of the deficiency. We agree. Whether Eatel is liable in redhibition is the central issue and this issue is obviously common to all claimants. (Emphasis added.)
Mire v. EatelCorp, Inc., 02-1705, pp. 5-6 (La.App. 1 Cir. 5/9/03), 849 So.2d 608, 613-14. We reiterated our understanding of the plaintiffs' theory of recovery as follows:
Here, the claim of every class member lies in redhibition; the legal theory is the same and each claim arises out of the same course of conduct  Eatel's sales of its telephones with inadequate disclosure of the subsidy locks. We find no error in the trial court's finding that the element of typicality has been established. (Emphasis added.)
Mire, 02-1705 at pp. 8-9, 849 So.2d at 615.
The majority misquotes this court's understanding of the plaintiff's position. The omitted part of the quote is in bold, as follows:
[T]he plaintiffs argue that predominate common factual and legal issues is Eatel's failure to adequately disclose to its customers that the telephones they purchased contain a subsidy lock that renders [the telephones] useless and inoperable with any other service provider upon termination of their services with Eatel. (Emphasis added.)
Mire, 02-1705 at p. 5, 849 So.2d at 613. And the majority accuses the plaintiffs of Frankensteinian attempts to animate a patchwork creation.
The majority correctly notes in its opinion that nothing bars "reconsideration of the propriety of maintaining the class action if the fundamental nature of its cause of action changes." But here, there has been no change in the fundamental nature of plaintiffs' cause of action. The plaintiffs' stipulation that the subsidy lock was not defective in no way alters their theory of recovery as understood by a prior panel of this court. Accordingly, the trial court was manifestly erroneous in finding otherwise.
*1121 The majority here also concludes that, "by renouncing the subsidy lock itself as a redhibitory defect, plaintiffs effectively renounced redhibition as the viable theory of their case, and consequently removed their action from maintenance a class action." This conclusion is wholly inconsistent with the ruling of the prior panel of this court as set forth above, despite the majority's protestations to the contrary.
Under law of the case doctrine, we are bound to follow the prior ruling of this court on this issue. An appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. However, where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. Cole v. State, Dept. of Public Safety and Corrections, 03-2269, p. 3 (La.App. 1 Cir. 6/25/04), 886 So.2d 463, 465, writ denied, 04-1836 (La.10/29/04), 885 So.2d 589.
Eatel has made no argument that the prior disposition was clearly erroneous, nor has it demonstrated that grave injustice will result from maintaining the class certification. And it is not apparent that the prior ruling of this court was clearly erroneous and will result in grave injustice.
I make no prediction on whether the plaintiffs will be able to prevail on their theory of recovery, but that is not the question for us to decide today; class decertification is. Since the plaintiffs have not changed the theory of their case, the trial court had no factual basis on which to decertify the class. Accordingly, I find the trial court was manifestly erroneous in finding otherwise and would reverse its judgment. This result would be consistent with the prior ruling of this court on the precise issue before us.
CARTER, C.J., concurring.
I agree with the result reached in the majority opinion. However, I do not join in the majority's characterizations of plaintiffs' legal arguments or strategies. Therefore, I concur in the result only.
NOTES
[1] For convenience, we henceforth refer to the alternate regulatory jurisdiction of the FCC and the LPSC as the FCC's jurisdiction.
[2] Mire, 02-1705 at p. 2, 849 So.2d at 611-12. On March 22, 2004, plaintiffs' counsel further acknowledged that judicial confession in oral argument before the trial court on Eatelcorp's renewed declinatory exception of lack of subject matter jurisdiction.
[3] Plaintiffs' appellate brief states: "[T]he redhibitory defect is an entirely useless and inoperable telephone handset, with each telephone handset rendered redhibitorily defective by the fraudulent and deceptive conduct of Eatel [sic] by programming each telephone to render it entirely useless."
[4] "The seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. C.C. art. 2520. (Our emphasis.) A redhibitory defect has also been defined in the jurisprudence as a "physical imperfection or deformity, a lacking of a necessary component or level of quality." Downs v. Hammett Properties, Inc., 39,568, p. 5 (La.App. 2nd Cir.4/6/05), 899 So.2d 792, 796, citing Williams v. Louisiana Machinery Company, Inc., 387 So.2d 8, 11 (La.App. 3rd Cir.1980).
[5] Louisiana Civil Code art. 2524 provides:

The thing sold must be reasonably fit for its ordinary use.
When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.
If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.
Under this article, if the thing sold is not reasonably fit but is free of redhibitory defects, the buyer's action is one for breach of contract and not redhibition. La. C.C. art. 2524, Revision Comment (b)  1993.
Louisiana Civil Code art. 2529 provides:
When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations.
[6] We further question plaintiffs' characterization of the "intended use" of the telephones. The class was defined as including any persons who purchased wireless telephones from Eatelcorp at any time from October 10, 1997 through December 8, 1999. Plaintiffs seem to assume, without any basis, that every member of the defined class necessarily intended at the time of purchase to terminate his service contract with Eatelcorp and to use the telephone purchased from Eatelcorp with a competitor of Eatelcorp. Any rational inquiry as to such "intended use" would necessarily inject subjective issues into the commonality element required to maintain the class action.
[7] See Hampton, 98-0430 at p. 2, 730 So.2d at 1097 (Kuhn, J., concurring).
[8] A defect is "[s]omething that mars the appearance or causes inadequacy or failure." Roget's II: The New Thesaurus 111 (3rd ed.1996). (Emphasis supplied.) It is not a coincidence that the words "effect" and "defect" derive from a common Latin root, facere (meaning to make or to do). Merriam-Webster's Collegiate Dictionary 302, 367 (10th ed.1998).