NORETTA THOMAS AND DEMETRICE BUTLER, EACH INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED
v.
A. WILBERT & SONS, L.L.C. AND XYZ INSURANCE COMPANY
No. 2008 CA 0959
Court of Appeals of Louisiana, First Circuit.
May 8, 2009.
Not Designated for Publication
PATRICK W. PENDLEY STAN P. BAUDIN, Counsel for Plaintiffs/Appellees Noretta Thomas, et al.
ROBERT H. SCHMOLKE D. ADELE OWEN. F. BARRY MARIONNEAUX F. CHARLES MARIONNEAUX, Counsel for Defendant/1st Appellant The Dow Chemical Company.
JOHN MICHAEL PARKER ANNE J. CROCHET DAVID M. BIENVENUE, Jr. TIMOTHY J. POCHÉ MICHELLE M. HOWARD, JOHN P. WOLFF, III NANCY B. GILBERT CHRISTOPHER K. JONES, Counsel for Defendant/2nd Appellant Scottsdale Insurance Company.
JAMES P. DORE MARK A. MARIONNEAUX AMY D. BERRET ALAN J. BERTEAU, Counsel for Defendant/3rd Appellant A. Wilbert's Sons, L.L.C.
JAMES D. "BUDDY" CALDWELL Attorney General, WILLIAM M. HUDSON PATRICK B. McLNTIRE, Counsel for Defendant/4th Appellant Louisiana Department of Health & Hospitals.
DONALD T. CARMOUCHE VICTOR L. MARCELLO JOHN H. CARMOUCHE WILLIAM R. COENEN JOHN S. DuPONT, III BRIAN T. CARMOUCHE
LEWIS O. UNGLESBY ROBERT M. MARIONNEAUX WILLIAM W. GOODELL, JR. Counsel for Defendants/5th Appellants Troy Robichaux, et al
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
DOWNING, J.
This appeal challenges the judgment of the trial court certifying a class action. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL HISTORY
This matter involves two allegedly competing class actions concerning the contamination of the Plaquemine aquifer by The Dow Chemical Company (Dow). The first suit to be filed was Thomas v. A. Wilbert & Sons, L.L.C., which was filed in April 2001 (the Thomas action).[1] After numerous amendments to the petitions, the Thomas plaintiffs had stated claims for which they sought class certification against Dow, A. Wilbert's Sons, L.L.C. (Wilbert),[2] the Louisiana Department of Health and Hospitals (DHH), and Scottsdale Insurance Company (Scottsdale) in its capacity as Wilbert's insurer.
According to the various petitions, Dow's chemical manufacturing facility was located above the Plaquemine aquifer. This facility was responsible for the production and disposal of vinyl chloride and other chemicals, which were allegedly responsible for the contamination of the aquifer. Wilbert was the owner of the Myrtle Grove Trailer Park (Myrtle Grove) located in Plaquemine, and Myrtle Grove had two wells that pumped water from the Plaquemine aquifer for use by its residents and visitors. In 1997 and 1998, DHH allegedly tested samples of the water wells at Myrtle Grove as part of its routine testing schedule and discovered that the wells contained a level of vinyl chloride higher than applicable drinking water standards. Despite having knowledge of the elevated levels of vinyl chloride after these tests, DHH allegedly failed to notify the plaintiffs and class members of the test results until the wells were tested again in 2001, revealing levels of vinyl chloride contamination beyond that which was safe for human consumption.
Accordingly, the Thomas plaintiffs filed suit against Dow for causing the contamination to the Plaquemine aquifer and against Wilbert[3] for failing to provide clean water to the residents and visitors of Myrtle Grove. The plaintiffs also stated claims against Wilbert and DHH for failure to warn them of the presence of the chemicals in the water until 2001. The plaintiffs originally sought primarily personal injury damages; however, they later amended their petition to seek punitive damages. The petition was also amended to state claims for property damages on behalf of certain property owners in north Plaquemine for damage they allegedly sustained to their property through which the Plaquemine aquifer runs. These property owners assert, in part, that they are entitled to damages because Dow's chemicals have caused damage to their personal water wells, as well as loss and devaluation to their property, including real estate. At various times throughout this litigation, these plaintiffs have alternately referred to these allegations as stating a cause of action for civil trespass or as a claim against Dow for improperly "storing" its chemicals in their property.
While the Thomas action was pending, a second petition seeking class action status was filed in Iberville Parish in March 2002, bearing the caption Robichaux v. State of Louisiana (the Robichaux action).[4] Like the Thomas plaintiffs, the Robichaux plaintiffs asserted claims against Dow and DHH; however, they did not state any claims against Wilbert's for personal injury or other damages arising out of the incidents at Myrtle Grove. Instead, the Robichaux plaintiffs limited the recovery they sought in their class action to punitive damages, except as against the State of Louisiana, and remediation of the groundwater pursuant to La. R.S. 30:2015.1 (the Groundwater Remediation Act). Although the Thomas action was filed first, the Robichaux plaintiffs attained class certification status first. This court affirmed the certification on appeal. See Robichaux v. State ex rel. Dept. of Health and Hospitals, XXXX-XXXX (La. App. 1 Cir. 12/28/06), 952 So.2d 27, 41-42, writs denied, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La. 6/22/2007), 959 So.2d 503, 504.[5]
In August 2007, after a class certification hearing, the Thomas plaintiffs were certified as a class with four subclasses defined as follows:
All persons or entities who or which sustained damages to their real property since 1985 due to vinyl chloride, its successors or derivatives in the Plaquemine aquifer, or who were exposed to the drinking water supply at the Myrtle Grove Trailer Park which occurred on or before and since the year 1997 near or in Plaquemine, Louisiana. The class consists of all persons and entities located or residing or having a property or other economic interest in the affected area. This area is generally described as bounded on the north by Woodlawn and Industrial Streets, on the east by the Mississippi River, on the west by a portion of Myrtle Grove Plantation and the western one-half of the Island Subdivision and on the south by Court Street. Specifically excluded from the class definition is any property owned by The Dow Chemical Company or any of its subsidiaries or affiliates or the State of Louisiana.
This class definition is comprised of the following sub-classes only:
SUBCLASS A: An opt-out personal injury class of individuals who lived in or visited the Myrtle Grove Trailer Park and who were exposed to the drinking water from the Myrtle Grove Trailer Park water system from about 1997 until March 30, 2001.
SUBCLASS B: An opt[-]out medical monitoring class of individuals who were exposed to the drinking water from the Myrtle Grove Trailer Park water system from 1997 until March 30, 2001 and lived in or visited the Myrtle Grove Trailer Park.
SUBCLASS C: An opt-out property damage class of individuals and/or entities that currently or previously owned real estate between the years 1985 and the date of the trial of this matter that is located in that area bounded on the north by Woodlawn and Industrial Streets, on the east by the Mississippi River, on the west by a portion of Myrtle Grove Plantation and the western half of the Island Subdivision and on the south by Court Street in the City of Plaquemine.
SUBCLASS D: An out-out punitive damage class is hereby certified as to The Dow Chemical Company only, of all persons or entities who are included within Sub-Classes A, B and C for the damages set forth therein.
Excluded from this Class and Subclasses are: (1) the Dow Chemical Company and its officers, directors and employees, and any entity in which The Dow Chemical Company has a controlling interest; (2) the State of Louisiana; and (3) any person whose claims were dismissed with prejudice in the matter entitled, "Ada M. Anderson, et al v. The Dow Chemical Company, Civil Action No. 02-12-RET-SCR, Middle District of Louisiana, United States District Court," is barred from any class membership as to The Dow Chemical Company only.
Subclasses A and B are certified as to A. Wilbert's Sons, L.L.C, Louisiana Department of Health and Hospitals and The Dow Chemical Company.
Subclasses C and D are certified as to The Dow Chemical Company only.[6]
On September 18, 2007, after the judgment of certification in the Thomas action was signed, the Thomas action and the Robichaux action were consolidated for trial.[7]
The Robichaux plaintiffs and all defendants appealed the judgment of class certification; however, while the appeal was pending, the Thomas plaintiffs and all of the defendants reached a settlement agreement concerning the A and B subclasses. As part of the settlement, Dow also agreed to dismiss its appeal challenging the certification of subclasses C and D.[8] Therefore, Dow, Wilbert, DHH, and Scottsdale have dismissed their appeals of the judgment of class certification, without prejudice. The Robichaux plaintiffs were not a party to the settlement agreement; thus, their appeal remains viable, and the only remaining issues on appeal are those raised by them.

LAW AND DISCUSSION
A trial court's decision to certify a class action is a two-step process. The trial court must first determine whether a factual basis exists for class action certification. If the trial court finds that a factual basis exists for certification, it then must exercise its discretion in deciding whether to certify the class. Appellate review must therefore consist of a two-part analysis. The trial court's factual findings in the first step of certification are subject to review under the manifest error standard. The trial court's ultimate decision regarding certification is then reviewed under the abuse of discretion standard. Boyd v. Allied Signal, Inc., XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, XXXX-XXXX, pp. 8-9 (La. App. 1 Cir. 12/30/04), 898 So.2d 450, 456, writ denied, XXXX-XXXX (La. 4/1/05), 897 So.2d 606; Mire v. EatelCorp, Inc., XXXX-XXXX, p. 3 (La. App. 1 Cir. 5/9/03), 849 So.2d 608, 612, writ denied, XXXX-XXXX (La. 10/3/03), 855 So.2d 317; Singleton v. Northfield Insurance Company, XXXX-XXXX, p. 7 (La. App. 1 Cir. 5/15/02), 826 So.2d 55, 60-61, writ denied, XXXX-XXXX (La. 9/30/02), 825 So.2d 1200.
The trial court has vast discretion in determining whether to certify a class. Appellate courts will only decertify a class where there has been an abuse of this discretion. Banks v. New York Life Insurance Company, 98-0551, p. 6 (La. 12/7/98), 722 So.2d 990, 993-994. If there is to be an error made, it should be in favor of and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 620 (La. 1984); see also La. C.C.P. 592(A)(3)(c).
In determining whether to certify a class, a trial court must apply La. C.C.P. art. 591(A).[9] That Article establishes five mandatory requirements for class certification: numerosity, commonality of factual or legal questions, typicality of the lead plaintiff or plaintiffs' claims, adequacy of the lead plaintiff or plaintiffs as class representatives, and objectivity of the class definition. Robichaux, XXXX-XXXX at p. 8, 952 So.2d at 33. The party seeking class status has the burden of establishing these required qualifications. Carr v. GAF, Inc., 97-0838, p. 6 (La. App. 1 Cir. 4/8/98), 711 So.2d 802, 805-806, writ denied, 98-1244 (La. 6/19/98), 721 So.2d472.
Although these qualifications are critical to the trial court's analysis of the issue of class certification, the Robichaux plaintiffs have not raised any challenges to the certification judgment based on these elements on appeal.[10] Instead, the Robichaux plaintiffs raised a single assignment of error on appeal. Specifically, they contended that the trial court erred in certifying the Thomas action because the certification prejudiced their rights as the members of a previously certified class. They further suggested that three issues were presented for review based on this assignment of error: 1) the certification order in the Thomas action prejudiced the rights of plaintiffs in the Robichaux action regarding claims asserted under the Groundwater Remediation Act (La. R.S 30:2015.1); 2) the "storage" claims in the Thomas action were really remediation claims covered in the Groundwater Remediation Act; and 3) the certification order in the Thomas action was contrary to Article IX, Section I of the Louisiana Constitution.[11]

The Groundwater Remediation Act
Prior to the passage of La. R.S. 30:2015.1 in 2003, there had been no comprehensive procedure ensuring that damages awarded for the remediation of contaminated groundwater would actually be used for that purpose. A landowner awarded damages for the remediation or restoration of property or groundwater could use that award for any purpose and was under no obligation to actually remediate the property. See Corbello v. Iowa Production, XXXX-XXXX, p. 16 (La. 2/25/03), 850 So.2d 686, 699.
In a partial response to Corbello, the Louisiana legislature passed La. R.S. 30:2015.1 to establish a set of procedures to be followed in litigation in which the plaintiffs sought "to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable [groundwater]." La. R.S. 30:2015.1(B); see Robichaux, XXXX-XXXX at p. 18, 952 So.2d at 39. The statute reads, in pertinent part:
A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources of the state, including water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy.
B. Notwithstanding any law to the contrary, upon the filing of any litigation, action, or pleading by any plaintiff in the principal demand, or his otherwise making a judicial demand which includes a claim to recover damages for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, such plaintiff filing same shall provide written notice by certified mail, return receipt requested, which notice shall contain a certified copy of the petition in such litigation, to the state of Louisiana through the Department of Environmental Quality. To the extent that any such litigation or action seeks to recover for the evaluation and remediation of any contamination or pollution that is alleged to impact or threaten usable ground water, the Department of
Environmental Quality, in accordance with its respective areas of constitutional and statutory authority and regulations adopted pursuant thereto, shall have the right to intervene in such litigation or action in accordance with the Louisiana Code of Civil Procedure. The department shall not have the right to independently assert a plea for damages to usable ground water beyond that stated by the plaintiff in the principal demand. However, nothing in this Section shall diminish the authority of the department from independently bringing any civil or administrative enforcement action. No judgment or order shall be rendered granting any relief in such litigation, nor shall the litigation be dismissed, without proof of notification to the state of Louisiana as set forth in this Subsection.
***
E. (1) Whether or not the Department of Environmental Quality becomes a party, and except as provided in Subsection I of this Section, all damages or payments in any civil action, including interest thereon, awarded for the evaluation and remediation of contamination or pollution that impacts or threatens to impact usable ground water shall be paid exclusively into the registry of the court as provided in this Section.
(2) The district court may allow any funds to be paid into the registry of the court to be paid in increments as necessary to fund the evaluation and remediation. In any instance in which the court allows the funds to be paid in increments, whether or not an appeal is taken, the court shall require the posting of a bond for the implementation of the plan of remediation in such amount as provided by and in accordance with the procedures set forth for the posting of suspensive appeal bonds.
(3) The court shall issue such orders as may be necessary to ensure that any such amount is actually expended for the evaluation and remediation of the contamination of the usable ground water for which the award or payment is made.
(4) In all such cases, the district court shall retain jurisdiction over the funds deposited and the party cast in judgment until such time as the evaluation and remediation is completed. The court shall, on the motion of any party or on its own motion, order the party cast in judgment to deposit additional funds into the registry of the court, if the court finds the amount of the initial deposit insufficient to complete the evaluation or remediation and, upon completion of the evaluation and remediation, shall order any funds remaining in the registry of the court to be returned to the depositor.
The Robichaux plaintiffs correctly contend that the provisions of this statute are intended to protect the rights of the public in the natural resources of the state. However, the Robichaux plaintiffs assert further that to allow the Thomas plaintiffs to assert their individual claims for damages would interfere with their rights to assert claims on behalf of the public for remediation of the Plaquemine aquifer, which allegedly puts the interest of private landowners ahead of the public interest. Such a result would not only be in violation of the statute, according to the Robichaux plaintiffs, but it would also violate Article IX, Section I of the Louisiana Constitution.[12] However, while the statute does place some limitations on the rights of the individuals in favor of the public, in that it requires all damages for remediation to be paid into the registry of the court and actually used for the purpose of remediation, the statute clearly allows a landowner to assert a private claim for damages apart from the remediation of the groundwater. Specifically, La. R.S. 30:2015.1(1) provides:
This Section shall not preclude an owner of land from an award for personal injury or damage suffered as a result of contamination that impacts or threatens usable ground water. This Section shall not preclude an owner of land from an award for damages to or for remediation of any other part of the surface or subsurface of his property and any award granted in connection therewith shall not be paid into the registry of the court, but shall be made directly to the owner of the land. This Section shall not preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the Department of Environmental Quality as may be required in accordance with the terms of an expressed or implied contractual provision. This Section shall not be interpreted to create any cause of action.
Therefore, the Thomas plaintiffs may assert private claims arising out of the property damage they allegedly sustained, and this argument by the Robichaux plaintiffs is without merit.
The Robichaux plaintiffs further contend that the "storage" claims asserted by the Thomas plaintiffs are nothing more than another type of remediation claim. According to the Robichaux plaintiffs, depending on the remediation remedy accepted by the jury and the court, "storage" of the contamination in the property of the Thomas plaintiffs, either temporarily or permanently, may be a component of the remediation remedy sought under the Groundwater Remediation Act. We note, however, that this argument requires a discussion of the merits of the Thomas plaintiffs' claims  a discussion that is not appropriate to a determination of the propriety of class certification.
Class certification is purely procedural. The issue at a class certification hearing is whether the class action is procedurally preferable, not whether any of the plaintiffs will be successful in urging the merits of their claims. Boyd, XXXX-XXXX at p. 11, 898 So.2d at 457; Hampton v. Illinois Central R.R. Co., 98-0430, 98-0431, 98-0432, 98-0433, 98-0434, 98-0435, p. 6 (La. App. 1st Cir. 4/1/99), 730 So.2d 1091, 1093. The court is not authorized by statute or by history of the class action procedure to assess the likelihood of success on the merits before approving a class action. Furthermore, the determination of whether there is a proper class does not depend upon the existence of a cause of action. Hampton, 98-0430 at p. 6, 730 So.2d at 1093. It is possible that the Thomas plaintiffs will be unable to prove their theory of the case or their entitlement to damages for the "storage" of the chemicals in their property; however, that issue is not before this court at this time. Therefore, this argument is without merit.

DECREE
For the foregoing reasons, we hereby affirm the judgment of the trial court certifying the Thomas plaintiffs as a class. Each party is to bear its own costs of appeal.
AFFIRMED.
WHIPPLE, J., dissenting.
I respectfully dissent from the majority opinion because I believe that the certification of the first class precludes the certification of the second class.
NOTES
[1] This suit was assigned docket number 55,127, Division B, in the Eighteenth Judicial District Court for the Parish of Iberville.
[2] This defendant is alternately named in the various petitions as A. Wilbert & Sons, L.L.C, and A. Wilbert's & Sons, L.L.C; however, it appears that the correct name is A. Wilbert's Sons, L.L.C.
[3] Scottsdale was also named as a defendant.
[4] This suit was assigned docket number 56,803, Division A, in the Eighteenth Judicial District Court.
[5] While the two suits were pending, but prior to the certification of any class in either suit, the plaintiffs in the Robichaux action filed a petition for intervention and an accompanying motion for leave to intervene in the Thomas action. The trial court initially denied the motion, and the Robichaux plaintiffs appealed. This court remanded the matter to the trial court with an order instructing the trial court to grant the order. See Thomas v. A. Wilbert & Sons, L.L.C., 2003-2416 (La. App. 1 Cir. 9/17/04), 888 So.2d 243, 244. In addition, the Thomas plaintiffs apparently intervened in the Robichaux action.
[6] The trial court initially signed a judgment on August 2, 2007, certifying a class with a slightly different definition; however, the definition was revised after a motion for new trial, and the new judgment with the above definition was signed on August 29, 2007.
[7] In January, 2009, the Robichaux plaintiffs challenged the consolidation of the two actions for trial by filing a motion to deconsolidate the matters in the trial court. The trial court denied the motion, and the Robichaux plaintiffs filed a writ application with this court. By separate writ action handed down this date, we have deconsolidated the two actions. Thomas v. A. Wilbert & Sons, Inc., L.L.C., XXXX-XXXX (La. App. 1 Cir. 5/8/09).
[8] According to the class definition, these subclasses were certified only against Dow. To the extent that punitive damages were derivative of claims from subclasses A and B, the settlement appears to have dispensed with them.
[9] Louisiana Code of Civil Procedure Article 591(A) provides:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
[10] The defendants raised numerous challenges to the certification judgment, including challenges based on these elements, in their appellant briefs. Counsel for the Robichaux plaintiffs attempted to rely on the arguments of these defendants in oral argument before this court; however, all of the defendants have dismissed their appeals and are no longer participating in the appeal. The Robichaux plaintiffs never raised these arguments in their own brief to this court, nor did they adopt the arguments of the defendants by reference. Therefore, the issues raised by those defendants are not properly before this court at this time.
[11] It should be noted that the Robichaux plaintiffs did not raise any of these challenges, including the constitutional challenge, in the trial court.
[12] This provision states:

The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.